# United States Court of Appeals

**FOR THE EIGHTH CIRCUIT**

———————————

No. 97-4227

———————————

| | | |
|---|---|---|
| United States of America, | * | |
| | * | |
| Appellee, | * | |
| | * | Appeal from the United States |
| v. | * | District Court for the |
| | * | Northern District of Iowa. |
| William Maurice Smith, | * | |
| | * | |
| Appellant. | * | |

———————————

Submitted: October 21, 1998
Filed: March 24, 1999

———————————

Before McMILLIAN, JOHN R. GIBSON, and HANSEN, Circuit Judges.

———————————

HANSEN, Circuit Judge.

William Maurice Smith conditionally pleaded guilty to two firearm charges. He conditioned his plea on the right to appeal the district court's[1] denial of his motions to dismiss the indictment. Smith now appeals the denial of those motions. He also appeals one aspect of his sentence. We affirm.

———————————

[1]The Honorable Michael J. Melloy, Chief Judge, United States District Court for the Northern District of Iowa.

## I.

The facts underlying the current federal firearm charges occurred in 1996 when Smith, who was then twenty years old, bought a gun with a driver's license that listed his age as twenty-one. On November 17, 1996, Smith shot and wounded Lauralee Lorenson during an argument. The grand jury returned a three-count superseding indictment based on these events. Smith's motions to dismiss the indictment were denied by the district court. Smith then conditionally pleaded guilty to one count of making false representations in connection with the purchase of a firearm, see 18 U.S.C.A. § 922(a)(6) (West. Supp. 1998), and one count of possessing a firearm after having been convicted of a misdemeanor involving domestic violence. See 18 U.S.C.A. § 922(g)(9). Smith was sentenced to 51 months in prison to be followed by a three year term of supervised release.

The predicate offense for Smith's § 922(g)(9) charge is an Iowa simple misdemeanor assault conviction. In 1994, Smith pleaded guilty to assault, see Iowa Code §§ 708.1; 708.2(4) (1994), involving an incident with Lorenson, the mother of his child and the victim of the later shooting involved in the current federal offense. The state court appointed counsel to represent Smith on the assault charge, but his counsel did not appear at his plea hearing on November 28, 1994. Following his counsel's failure to appear at the hearing, Smith signed a "Waiver of Right to Counsel" and pleaded guilty to simple misdemeanor assault. He was fined $100.

## II.

We review de novo the district court's denial of Smith's motions to dismiss the indictment. See United States v. Nattier, 127 F.3d 655, 657 (8th Cir. 1997), cert. denied, 118 S. Ct. 1398 (1998). Smith challenges the application to his case of 18 U.S.C.A. § 921(a)(33), which defines a "misdemeanor crime of domestic violence," arguing that: 1) Iowa Code § 708.1, which defines assault, does not contain the

2

required elements of: a) the use or attempted use of physical force, and b) a domestic relationship; and 2) he did not intelligently and knowingly waive his right to counsel at the underlying plea hearing as required by § 921(a)(33)(B)(i)(I). Smith also challenges the constitutionality of § 921(a)(33), arguing it: 1) is vague and overbroad; and 2) violates equal protection. Finally, Smith argues that Article IV, Section 4 of the United States Constitution prevents application of U.S.S.G. § 2A2.2 to this case of domestic violence.

## A.  Statutory Challenges to § 922(g)(9)

### 1.  Elements of Predicate Offense

Congress enacted 18 U.S.C. § 922(g)(9) in 1996, providing: "It shall be unlawful for any person . . . who has been convicted in any court of a misdemeanor crime of domestic violence . . . to possess in or affecting commerce, any firearm." Section 921(a)(33)(A)(ii) defines "misdemeanor crime of domestic violence" as one that "has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, . . . [or] by a person with whom the victim shares a child." The government concedes that § 921(a)(33) requires the predicate misdemeanor crime to "ha[ve], as an element, the use or attempted use of physical force." (See Appellee's Br. at 6.) Smith contends that the predicate misdemeanor must also have, as an element, a domestic relationship between the perpetrator and the victim, and argues that his predicate offense of simple assault does not contain this element.

In construing a statute, we look first to the plain meaning of the words of the statute. See Salinas v. United States, 118 S. Ct. 469, 474 (1997). Only if the statute is ambiguous do we look to the legislative history to determine Congress's intent. See United States v. Gonzales, 117 S. Ct. 1032, 1035 (1997). In the statute at issue, the singular term "element" modifies the phrase "the use or attempted use of physical

force . . . ." If Congress meant the predicate misdemeanor to have two elements, it would have used the plural form of "element." See United States v. Green, 902 F.2d 1311, 1312 (8th Cir.), cert. denied, 498 U.S. 943 (1990). We find the language of the statute to be unambiguous, and look to the legislative history only to bolster our conclusion: "[C]onvictions for domestic violence-related crimes often are for crimes, such as assault, that are not explicitly identified as related to domestic violence." 142 Cong. Rec. S11872-01, *S11878 (1996) (statement of Sen. Lautenberg). In recognizing that domestic violence-related crimes often involve crimes which are not necessarily so designated, Congress evinced its intent that the predicate offense need not contain a domestic relationship as an element. Thus, we hold that while § 921(a)(33) requires proof of a domestic relationship, it requires the predicate misdemeanor to have only one element: the use or attempted use of physical force (or its alternative, the threatened use of a deadly weapon, a situation not here presented).

Smith pleaded guilty to simple misdemeanor assault under Iowa Code § 708.2(4). The Iowa assault statute distinguishes between aggravated misdemeanor assaults, serious misdemeanor assaults, and simple misdemeanor assaults based on the level of intent and whether a dangerous weapon was involved. See Iowa Code § 708.2(1)-(4). All assaults are defined by reference to § 708.1, which defines "assault" as occurring when a person does any of the following:

> (1) Any act which is intended to cause pain or injury to, or which is intended to result in physical contact which will be insulting or offensive to another . . . .
>
> (2) Any act which is intended to place another in fear of immediate physical contact which will be painful, injurious, insulting, or offensive . . . .

Thus, a generic assault in Iowa may include, as an element, placing another in fear of imminent physical contact. If Smith pleaded guilty to § 708.1(2), then he was not

convicted of an offense that "has, as an element, the use or attempted use of force." 18 U.S.C.A. § 921(a)(33)(A)(ii).

When statutory language dictates that predicate offenses contain enumerated elements, we must look only to the predicate offense rather than to the defendant's underlying acts to determine whether the required elements are present. See United States v. Wright, 957 F.2d 520, 522 (8th Cir.) (construing United States Sentencing Guidelines (U.S.S.G.) § 4B1.2(1)(i), which defines "crime of violence" as an offense that "has as an element, the use, attempted use, or threatened use of physical force" (emphasis added)), cert. denied, 506 U.S. 856 (1992). We may expand our inquiry under this categorical approach to review the charging papers and jury instructions, if applicable, only to determine under which portion of the assault statute Smith was convicted. See Taylor v. United States, 495 U.S. 575, 602 (1990).

This case is quite similar to Taylor, which involved a sentence enhancement under 18 U.S.C. § 924(e) for prior burglaries. The Supreme Court read § 924(e) as requiring the predicate burglary offense to contain the elements of generic burglary, precluding a court from looking to the defendant's underlying conduct. See Taylor, 495 U.S. at 600-01. The Court noted that the federal sentencing court could go beyond the mere fact of conviction, for example, and look to the charging papers and jury instructions to determine if the jury was required to actually find the elements of generic burglary in order to convict the defendant. Id. at 602. The Supreme Court remanded Taylor because the Court could not determine, from the record before it, under which subsection of the Missouri burglary statute the defendant had pleaded guilty and been convicted. Id. On remand, the government produced the charging papers, which detailed the elements of the crimes to which the defendant had pleaded guilty, though the papers did not include a reference to the specific section of the state burglary statute. See United States v. Taylor, 932 F.2d 703, 707 (8th Cir.), cert. denied, 502 U.S. 888 (1991). On appeal from the remand, we held that it was appropriate under the Supreme Court's ruling in a case where the predicate

convictions were the result of a guilty plea, to look to the charging papers to determine to which section of a statute a defendant pleaded guilty. <u>See</u> <u>id.</u> at 707-08. <u>See</u> <u>also</u> <u>United States v. Einfeldt</u>, 138 F.3d 373, 378 (8th Cir.) (looking to the information's specific allegations where the defendant pleaded guilty to a predicate act of burglary to determine if the predicate act was generic burglary under <u>Taylor</u>; district court can look to the "charging document as a whole"), <u>cert.</u> <u>denied</u>, 119 S. Ct. 126 (1998).

The state court complaint accused Smith of "commit[ting] an act which was intended to cause pain or injury to another, coupled with the apparent ability to execute said act." (Appellee's App. at 20.) The complaint recited that Smith grabbed Lorenson "by the throat, and did also push her down." (<u>Id.</u>) Thus, Smith was charged under Iowa Code § 708.1(1), for committing an act intended to cause pain, injury, or offensive or insulting physical contact, rather than § 708.1(2), for placing one in fear of such contact. As such, Smith was charged, and pleaded guilty to, an offense with an element of physical force within the meaning of 18 U.S.C.A. § 921(a)(33)(A)(ii).[2]

## 2.    Knowing and Intelligent Waiver Under § 921(a)(33)

Section 921(a)(33)(B)(i) provides that a person is not considered to have been convicted of a misdemeanor crime of domestic violence unless he was represented by counsel in the case or voluntarily and intelligently waived his right to counsel. Smith was appointed counsel for his Iowa assault charge but his counsel failed to appear at the plea hearing. After waiting for Smith's counsel to appear, the state magistrate asked Smith if he wanted to proceed with a proposed plea agreement. Though the record is unclear as to the exact exchange, the magistrate indicated that her general

---

[2]Smith argues that § 708.1(1) contains, as an element, physical contact that is merely insulting or offensive. However, such physical contact, by necessity, requires physical force to complete. Thus, we find little merit to this argument.

practice would have been to continue the proceeding to another day if Smith had requested the court to wait for his counsel. Smith does not claim to have made such a request and offers no evidence that the magistrate deviated from her normal practice. Smith's previous request for, and receipt of, appointed counsel shows his understanding of his right to, and the usefulness of, counsel. Additionally, Smith signed a form waiving his right to counsel[3] before entering the plea. A written waiver of counsel can be the basis for a valid waiver. See United States v. Turner, 975 F.2d 490, 496 (8th Cir. 1992), cert. denied, Dowdy v. United States, 506 U.S. 1082 (1993); United States v. Thomas, 543 F.2d 1226, 1228 (8th Cir. 1976), cert. denied, 429 U.S. 1051 (1977). The evidence of Smith's written waiver, coupled with his prior invocation of his right to appointed counsel, and the acceptance of his waiver by the Iowa magistrate who took his plea, sufficiently show, and allow us to conclude as a matter of law, that Smith voluntarily and knowingly waived his right to counsel at the plea hearing for purposes of § 921(a)(33)(B).

Smith contends that his waiver was not voluntary because his counsel was not present at the time of the waiver. There is no Sixth Amendment right to appointed counsel for a misdemeanor crime if the defendant's sentence does not include imprisonment. See Nichols v. United States, 511 U.S. 738, 746 (1994); Scott v. Illinois, 440 U.S. 367, 373-74 (1979). Smith's sentence was a $100 fine. Smith's right to appointed counsel arose under Iowa Rule of Criminal Procedure 42. Fifth Amendment jurisprudence prevents police officers from instigating interrogation of a defendant once he has invoked his constitutional right to counsel, unless that right has subsequently been waived in the presence of the attorney. See McNeil v. Wisconsin, 501 U.S. 171, 176-77 (1991). The purpose of this rule is to prevent a zealous police officer from coercing a defendant into waiving the already exercised

---

[3]The waiver form that Smith signed was for the crime of First Offense Assault/Domestic Abuse because the court did not have a form for simple assault. However, Smith concedes that he knew at all times that he was only charged with simple assault and that he faced a $100 fine pursuant to the plea agreement.

7

right to counsel so that the officer can then interrogate him.  <u>Id.</u> at 177.  Smith has not cited, and we have not found, any support for extending this Fifth Amendment prophylactic rule regarding the constitutional right to counsel in a custodial interrogation setting to a state statutory right to counsel at trial when a neutral judge supervises the execution of a waiver in the course of a hearing.  The purpose of the rule does not justify such an extension.  The court is not the defendant's adversary, and there is much less chance of coercion.  None was shown here.  Thus, we reject Smith's argument.

## B.    Constitutional Challenge

### 1.    Vagueness[4]

Smith contends that § 921(a)(33) is vague because it does not require the predicate misdemeanor offense to include elements of both physical force and a domestic relationship.  Because we have found that § 921(a)(33) requires the predicate offense to include an element of physical force, we address Smith's vagueness challenge concerning the existence of a domestic relationship.

To determine whether a criminal statute meets a vagueness challenge, we must assess "whether 'men of common intelligence must necessarily guess at its meaning and differ as to its application.'"  <u>Planned Parenthood of Minn. v. Minnesota</u>, 910 F.2d 479, 482 (8th Cir. 1990) (quoting <u>Baggett v. Bullitt</u>, 377 U.S. 360, 367 (1964)).  We are concerned about criminal statutes that lead to "arbitrary and erratic arrests and convictions."  <u>United States v. Donahue</u>, 948 F.2d 438, 441 (8th Cir. 1991) (internal quotations and citations omitted), <u>cert. denied</u>, 503 U.S. 976 (1992).  Section

---

[4]Although Smith characterizes this constitutional challenge as a vagueness and overbreadth challenge, he makes only the vagueness argument.  We limit our discussion accordingly.

921(a)(33) applies to any misdemeanor crime that has an element of physical force and that was "committed by a current or former spouse, . . . [or] a person with whom the victim shares a child." We would be hard pressed to find an individual of common, or even not so common, intelligence who could not determine whether he was in one of the enumerated relationships when he committed a misdemeanor crime including an element of physical force.

Smith argues that because Iowa also has a specific domestic abuse assault statute, see Iowa Code Ch. 708.2A, and he was charged with and pleaded guilty to the separate offense of simple misdemeanor assault, he was not fairly apprised that his conduct was forbidden by § 922(g)(9). We find this argument unconvincing. As we explained above, 18 U.S.C.A. § 921(a)(33) is unambiguous and does not require the underlying misdemeanor to contain a domestic relationship element. The fact that Smith could have been convicted under two misdemeanor statutes, one of which was arguably more applicable to the proscribed conduct, does not negate notice that conviction under the other similarly relevant misdemeanor statute could also serve as a predicate offense for § 922(g)(9).

## 2. Equal Protection

Section 921(a)(33)(B)(ii) provides an exception to the application of § 922(g)(9) "if the conviction has been expunged or set aside, or is an offense for which the person has been pardoned or has had civil rights restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)." As in most states, civil rights are not stripped from individuals convicted of a misdemeanor in Iowa. Thus, in Iowa, an individual convicted of a misdemeanor cannot benefit from the federal restoration exception. In contrast, a person convicted of a variety of Iowa felony offenses, including those potentially involving domestic relationships, can have his civil rights restored and thereby fit within a similar

9

exception to § 922(g)(1), allowing a felon to once again possess a firearm.  See 18 U.S.C.A. § 921(a)(20).

Smith argues he should fit within the restoration exception because the end result is the same--he is still possessed of his civil rights, regardless of whether he had them restored or he never lost them in the first place.  See United States v. Indelicato, 97 F.3d 627 (1st Cir. 1996), cert. denied, 117 S. Ct. 1013 (1997).  Indelicato avoided an equal protection challenge by indulging in a fiction.  The court found that a person convicted of a misdemeanor that nevertheless fit within the scope of a violent felony under 18 U.S.C.A. § 924(e),[5] and who subsequently did not have his civil rights forfeited, still qualified for the restoration exception of § 921(a)(20).  See id. at 629 (noting that this interpretation directly conflicts with the literal language of "restored" but indicating that the court did not feel bound by the literal language of the statute). We are not at liberty to engage in the fiction created by Indelicato, however, because § 921(a)(33) includes language that precludes such a fiction.  The restoration exception of § 921(a)(33) only applies to "civil rights [that have been] restored (if the law of the applicable jurisdiction provides for the loss of civil rights under such an offense)." 18 U.S.C.A. § 921(a)(33)(B)(ii) (emphasis added).  This parenthetical language is not contained within § 921(a)(20), which was applied in Indelicato. Additionally, to apply such a fiction to § 922(g)(9), aimed at misdemeanors, would be to vitiate the statute because most misdemeanor convictions do not result in the loss of civil rights.  Thus, almost all misdemeanants would fit within the exception and the exception would swallow the rule.  Such a result is to be avoided.

---

[5]Section 924(e) defines "violent felony" to include misdemeanors with potential prison sentences over two years by reference to § 922(g)(1).  See also 18 U.S.C.A. § 920(a)(20).

Because we refuse to include Smith within the restoration exception, he asserts that his right to equal protection afforded him by the Fifth Amendment[6] has been violated. Both parties' briefs argued under the rational basis standard of review without addressing which standard should apply. Smith argued orally that strict scrutiny applies because his constitutional right to bear arms was being infringed upon. However, the rational basis standard is appropriate because the Second Amendment is inapplicable. See Lewis v. United States, 445 U.S. 55, 65 n.8 (1980) (finding no Constitutional violation unless possession of a weapon has a reasonable relationship to the militia); Hale v. United States, 978 F.2d 1016, 1019 (8th Cir.), cert. denied, 507 U.S. 997 (1993).

In applying the rational basis standard, "we presume legislation is valid and will sustain it if the classification drawn by the statute is rationally related to a legitimate [governmental] interest." Chance Mgmt. Inc. v. South Dakota, 97 F.3d 1107, 1114 (8th Cir. 1996) (citing City of Cleburne v. Cleburne Living Ctr., Inc., 473 U.S. 432, 440 (1985)), cert. denied, 117 S. Ct. 1083 (1997). Smith carries the burden of proving that the distinction is wholly arbitrary and irrational, see id., "and that it cannot conceivably further a legitimate governmental interest." United States v. Phelps, 17 F.3d 1334, 1345 (10th Cir.), cert. denied, 513 U.S. 844 (1994).

Smith argues that this distinction--between a misdemeanant who is ineligible for the restoration exception because he never lost his civil rights and a felon who has had his civil rights restored--fails even the rational basis standard. This distinction is caused by Congress's reference to state laws that differ in the application of their restoration rules. See McGrath v. United States, 60 F.3d 1005, 1008 (2d Cir. 1995) (noting the different types of restoration mechanisms employed by different states,

---

[6]The Fifth Amendment due process clause incorporates the principles of equal justice under the law applicable to the federal government. See Lyng v. Castillo, 477 U.S. 635, 636 n.2 (1986).

11

from automatic restoration upon release from imprisonment to no restoration at all), cert. denied, 516 U.S. 1121 (1996). The distinction between misdemeanants and felons has not been addressed by a court of appeals under § 922(g)(9), but it has been addressed under related circumstances. The Second Circuit faced a similar issue in McGrath, involving a felon who, because he received a suspended sentence, did not forfeit his civil rights and thus could not have them restored under § 921(a)(20). The court rejected the defendant's equal protection claim that he was invidiously discriminated against because other, more serious felons were able to use the restoration exception merely because their felony conviction caused them to lose their civil rights, which were later restored. See id. at 1007. The court found that Congress intended the effect--if not the result--that occurred in that case, noting that the civil rights restoration exception was passed in response to a Supreme Court case which tried to federalize a felon's status. See id. at 1008-09 (noting the imperfections of the statute, yet finding it rationally related to a legitimate governmental interest). The court found it was rational for Congress to rely on "a state's judgment that a particular person or class of persons is, despite a prior conviction, sufficiently trustworthy to possess firearms," despite the anomalous results. Id. at 1009. Other courts have similarly found that Congress has a rational basis for relying on state restoration statutes in distinguishing between who can possess a firearm and who cannot. See, e.g., United States v. Collins, 61 F.3d 1379, 1383 (9th Cir.), cert. denied, 516 U.S. 1000 (1995); Phelps, 17 F.3d at 1345.

Congress knew that the states had widely divergent laws regarding pardon, expungement, and restoration of civil rights. This was true not only when Congress enacted § 921(a)(20), but even more so when it enacted § 921(a)(33) in 1996, ten years after enacting the much criticized restoration exception in § 921(a)(20). See McGrath, 60 F.3d at 1009 (noting various courts that have criticized the disparate treatment involving the restoration exception of § 921(a)(20) based on divergent state laws). Yet, Congress continued to look to state law to define the restoration

12

exception, noting that the exception in § 921(a)(33) was modeled after that contained in § 921(a)(20). See 142 Cong. Rec. S11872-01, *S11877.

Congress was cognizant of the disparity it would create. See id. ("Loss of these [civil] rights generally does not flow from a misdemeanor conviction, and so this language is probably irrelevant to most, if not all, of those offenders covered because of the new ban.") (statement of Sen. Lautenberg). However, Congress was concerned with domestic abuse offenders who were successful in pleading a felony charge down to a misdemeanor and thus escaping the effect of the felon-in-possession statutes. See id. at S11876. An earlier version of the bill did not cover attempted use of physical force or threatened use of a weapon. See id. at S11877. The change reflects Congress's concern that an individual in a domestic relationship who would attempt to use physical force or threaten use of a weapon was as dangerous as one who actually committed an act of physical force and similarly should not be allowed to possess a firearm. See id. Congress was concerned with the exact situation faced here: preventing a known (from the fact of the misdemeanor conviction) domestic abuser from later using a firearm to inflict the next bout of abuse. See id. at 11876. The district court reached the same conclusion. (See Sentencing Tr. at 119 ("[I]f there was ever a case which proved the wisdom of congressional action in prohibiting a person convicted of domestic assault from possessing a firearm, it's a case such as this.").)

Smith notes various Iowa felonies for which a convicted felon may seek the restoration of civil rights, including attempted murder, manslaughter, and third degree sexual assault. See Iowa Code § 914.7. He argues that there is no rationale for allowing an individual who has attempted to murder his spouse to possess a firearm by way of the restoration exception while preventing an individual who has "merely" (if that is the correct term) pushed his wife from doing so.

13

Smith has conveniently ignored the whole of the exception within § 921(a)(33). Congress did not limit the exception to restoration of civil rights, but also provided other methods--expungement and pardon--by which Smith could make use of the exception. For example, he could seek to have his misdemeanor conviction pardoned under Iowa law. See Iowa Const. art. 4, § 16; Iowa Code § 914.2 (1997) ("[A] person convicted of a criminal offense has the right to make application . . . to the governor for a reprieve, pardon, . . . or restoration of rights of citizenship at any time following the conviction."). Notably, in Iowa, the method for receiving a pardon and for receiving the restoration of one's civil rights is the same--both require application to the governor. See id. Though a pardon may not be Smith's preferred method of avoiding the consequences of his prior misdemeanor conviction, it still allows Smith an avenue for fitting within the exception to § 921(a)(33). See McGrath, 60 F.3d at 1009 (noting Congress provided other mechanisms of relief); National Ass'n of Gov't Employees, Inc. v. Barrett, 968 F. Supp. 1564, 1574-75 (N.D. Ga. 1997) (finding no equal protection violation under § 922(g)(9) because Congress provided misdemeanants the same mechanisms for avoiding the firearm ban under § 921(a)(33) as it provided felons under 921(a)(20)), aff'd, Hiley v. Barrett, 155 F.3d 1276, 1277 (11th Cir. 1998) (affirming "for the reasons stated in the district court's thorough and well-reasoned order.").

We hold that, because Smith can receive a pardon from the governor of Iowa, similar to a felon who can receive restoration of his civil rights, § 921(a)(33) does not invidiously discriminate against him. Further, it was entirely rational for Congress to extend the firearm ban to those convicted of misdemeanors where physical force was used involving domestic relationships, relying on state law to determine who would fit within the exception. Thus, Smith's equal protection rights were not violated.

**III.**

Smith's remaining contention is that his sentencing violates the Domestic Violence Clause of the Constitution. <u>See</u> U.S. Const. art. IV, § 4. Suffice it to say that when that Clause speaks of "domestic Violence" it means insurrection, riots, and other forms of civil disorder. It has no application to the Congress's powers to regulate the possession of handguns under the Commerce Clause. Smith's argument is not only unconvincing--it borders on the frivolous.

For the foregoing reasons, we affirm the judgment of the district court.

A true copy.

Attest:

CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT