UNITED STATES of America,
Plaintiff,

v.

**PLUMMER EXCAVATING,
INC., Defendant.**

**Criminal No. 99–121(2)(JRT/FLN).**

United States District Court,
D. Minnesota.

Sept. 3, 1999.

---

9. Barraza withdrew this motion at the suppression hearing.

R.J. Zayed, Assistant United States Attorney, Office of the United States Attorney, Minneapolis, MN, for plaintiff.

Charles Lee Hawkins, Hawkins Law Office, Minneapolis, MN, for Randy Lee Knoickson, defendant.

Peter Jeffrey Thompson, Thompson & Sicoli, Minneapolis, MN, for Plummer Excavating, Inc., defendant.

John W. Lundquist, Fredrikson & Byron, Minneapolis, MN, for Lakehead Pipeline Company and the Association of Oil Pipe Lines, objector.

## ORDER ADOPTING REPORT AND RECOMMENDATION ON DEFENDANT'S MOTION TO DISMISS INDICTMENT

TUNHEIM, District Judge.

This matter is before the Court upon the Government's objections to the Report and Recommendation of Chief United States Magistrate Judge Franklin L. Noel filed June 25, 1999. The Magistrate Judge recommends that defendant Plummer Excavating, Inc.'s motion to dismiss Count I of the indictment be granted, and that defendant's motion to dismiss Count II of the indictment be denied. The Government objects to the recommendation that Count I be dismissed. The Court has conducted a *de novo* review of the Report and Recommendation on this matter pursuant to 28 U.S.C. § 636(b)(1)(C) and D.Minn. LR 72.1(c)(2).

## I. FACTS

The following facts are taken from the Magistrate Judge's Findings of Fact, to which no party has objected and which the Court adopts.

The United States Secretary of Transportation requires that each state adopt a system, known as the "one-call system," whereby pipeline operators may be alerted to potentially damaging activity in the vicinity of a pipeline via a single telephone call. Parties intending to engage in potentially damaging activity are required to make a telephone call to an assigned number to determine whether underground pipeline is present.

Defendant Plummer Excavating Inc. is an excavation company located in Plummer, Minnesota. Co-defendant Randy Lee Konickson is one of its Vice Presidents. On or about September 11, 1998, Konickson directed a Plummer Excavating employee to remove piles of rocks on a field adjacent to Plummer Excavating. At the time he gave this instruction, Konickson knew that the employee would dig in the field to bury large rocks. Konickson also

knew that there was a crude oil pipeline in the field and was familiar with the one-call system. Nevertheless, Konickson did not call the assigned number.

At approximately 9:00 a.m. on September 16, 1998, the Plummer Excavating employee struck and damaged the crude oil pipeline with his backhoe. The employee told Konickson about the accident, but Konickson failed to inform anyone at Lakehead Pipeline Company, the owner of the pipeline. Later that day, at approximately 8:45 p.m., Lakehead employees discovered crude oil leaking from the pipeline where it had been damaged. The leak and accompanying noxious fumes forced the evacuation of Plummer, Minnesota. The total amount of crude oil that eventually leaked from the pipeline was approximately 5,700 barrels, or 240,000 gallons. The oil spread through agricultural drainage ditches to County Ditch No. 22, which connects to the Clearwater River through County Ditch No. 57.

## II. ANALYSIS

### A. Count I

Count I charges defendants with violating 49 U.S.C. § 60123(d), which states:

(d) Penalty for not using one-call notification system or not heeding location information or markings.—A person shall be fined under title 18, imprisoned for not more than 5 years, or both, if the person knowingly and willfully—

(1) engages in an excavation activity—

(A) without first using an available one-call notification system to establish the location of underground facilities in the excavation area; or

(B) without paying attention to appropriate location information or markings the operator of a pipeline facility establishes; and

(2) subsequently damages—

(A) a pipeline facility that results in death, serious bodily harm, or actual damage to property of more than $50,-000;

(B) a pipeline facility that does not report the damage promptly to the operator of the pipeline facility and to other appropriate authorities; or

(C) a hazardous liquid pipeline facility that results in the release of more than 50 barrels of product.

49 U.S.C. § 60123(d). Defendant argues that the "knowingly and willfully" level of scienter applies to the "subsequently damages" element, and the Government argues that it does not. Both parties agree that if the knowing and willful level of scienter applies to the subsequently damages element, Count I must be dismissed because the Government has not alleged that defendant intentionally damaged the pipeline.

■■■■ The interpretation of a statute begins with the plain meaning of its words. *See United States v. Smith,* 171 F.3d 617, 620 (8th Cir.1999). Courts resort to legislative history and other sources to guide their interpretation only if the meaning of the statute is ambiguous. *See id.*

■■■■ The Court agrees with the Magistrate Judge that a plain reading of the statute establishes that the knowing and willful scienter requirement applies to the subsequently damages element. As the Magistrate Judge explained, the placement of the scienter requirement prior to the subdivision of the section into subparts 1 and 2 indicates that the scienter requirement must be read with both subparts. Because a plain reading of the statute unambiguously indicates that the scienter requirement applies to the subsequently damages element, resort to the statute's legislative history is not necessary. *See Smith,* 171 F.3d at 620.

The Government and *amici* argue that the Court should nevertheless examine the legislative history for several reasons. First, they argue that the plain meaning of § 60123(d) is at odds with the clear Congressional purpose of the statute, and that the language of a statute is not conclusive if there is a " 'clearly expressed legislative

intent to the contrary.' " *Reves v. Ernst & Young*, 507 U.S. 170, 177, 113 S.Ct. 1163, 122 L.Ed.2d 525 (1993) (quoting *United States v. Turkette*, 452 U.S. 576, 580, 101 S.Ct. 2524, 69 L.Ed.2d 246 (1981)). The Court acknowledges that the purpose of § 60123(d) is to encourage compliance with the one-call system and thereby prevent damage to pipelines, and that applying the knowing and willful scienter requirement to both elements of the crime restricts the application of the statute. The words of the statute do not purport to accomplish the opposite of what the Government argues was Congress's intent, however. Instead, Congress enacted a version of the statute whose scope is limited in comparison to what the legislative history would suggest. After carefully considering the legislative history cited in the briefs, therefore, the Court finds that it is not the sort of "clearly expressed legislative intent to the contrary" necessary to overcome the plain meaning of the statute.

The Government and *amici* also argue that applying the knowing and willful scienter requirement to the subsequently damages element would render § 60123(d) redundant because another section of the statute, § 60123(b), criminalizes intentional vandalism of underground pipelines. *See* 49 U.S.C. § 60123(b). As the Magistrate Judge explained, the Supreme Court has recognized that criminal statutes can be redundant. *See United States v. Batchelder*, 442 U.S. 114, 121–22, 99 S.Ct. 2198, 60 L.Ed.2d 755 (1979) (stating that there is "no justification for taking liberties with unequivocal statutory language" simply because two statutes create different penalties for the same conduct). *Amici* distinguish *Batchelder* on the basis that *Batchelder* involved two separate statutes. In contrast, § 60123(b) and (d) are part of the same statute, and, they argue, it is unlikely that Congress would intentionally draft overlapping subparts. *See Freytag v. Commissioner*, 501 U.S. 868, 877, 111 S.Ct. 2631, 115 L.Ed.2d 764 (1991) (stating that "[o]ur cases consistently have expressed 'a deep reluctance to interpret a statutory provision so as to render super-

fluous other provisions in the same enactment' ") (quoting *Pennsylvania Dep't of Pub. Welfare v. Davenport*, 495 U.S. 552, 562, 110 S.Ct. 2126, 109 L.Ed.2d 588 (1990)).

In both *Freytag* and *Davenport*, however, the Court was interpreting the meaning of individual words or phrases. *See Freytag*, 501 U.S. at 873, 111 S.Ct. 2631 (interpreting "any other proceeding"); *Davenport*, 495 U.S. at 557, 110 S.Ct. 2126 (interpreting "debt"). Because the meaning of individual words and phrases often depends on context, it is sensible for the Court to interpret them so as to avoid redundancy. Here, however, the parties do not disagree on the meaning of any particular word in the statute; rather, they disagree whether certain words are to be read together. Unlike the meaning of individual words, which can expand or contract depending on context, the structure of § 60123(d) guides the reader to only one conclusion: that the scienter requirement applies to both the failure to call element and the subsequent damages element. Because the meaning of § 60123(d) is so clear on its face, there is nothing left to interpret, and the principle of *Freytag* and *Davenport* does not apply.

Finally, the Court agrees with the Magistrate Judge that the rule of lenity indicates that any ambiguity should be resolved in favor of defendant. *See United States v. Bass*, 404 U.S. 336, 347, 92 S.Ct. 515, 30 L.Ed.2d 488 (1971). *Amici* argue that the rule of lenity does not apply when resort to the legislative history and policies underlying a statute render its meaning clear. *See United States v. Warren*, 149 F.3d 825, 827 (8th Cir.1998). Resorting to the history of § 60123(d) does not render its meaning clear, however. At best, it renders the statute ambiguous, because the history is at odds with the statute. Where the clear statutory language is in defendant's favor, it would violate the principles underlying the rule of lenity to permit contrary legislative history to override it. Accordingly, the Court agrees with the Magistrate Judge that, under the

clear language of 49 U.S.C. § 60123(d), the knowing and willful level of scienter applies to both elements of the crime.

## B. Count II

Defendant has not objected to the portion of the Report and Recommendation recommending that its motion to dismiss Count II be denied. The Court agrees with the Magistrate Judge that County Ditch 22 is a "water of the United States" and accordingly adopts the Magistrate Judge's Report and Recommendation recommending denial of defendant's motion to dismiss Count II.

### ORDER

Based upon all of the files, records, and proceedings herein, the Court **OVERRULES** the objection of the Government [Docket No. 24] and **ADOPTS** the Magistrate Judge's Report and Recommendation [Docket No. 23]. Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendant's motion to dismiss the indictment [Docket No. 11] is **GRANTED IN PART** and **DENIED IN PART.**

2. Count I of the indictment is **DISMISSED.**

3. The motion is **DENIED** in all other respects.