**James WARD, Plaintiff–Appellant,**

v.

**Terry TOMSICK; Civil Service Commission of the City and County of Denver; and City and County of Denver, a Municipal corporation, Defendants–Appellees.**

No. 00CA0812.

Colorado Court of Appeals,
Div. IV.

April 12, 2001.

Certiorari Denied Sept. 10, 2001.

Bruno, Bruno & Colin, P.C., Marc F. Colin, R. Stephen Hall, Denver, CO, for Plaintiff–Appellant.

J. Wallace Wortham, Jr., City Attorney, Linda M. Davison, Assistant City Attorney, Denver, CO, for Defendants–Appellees.

Opinion by Judge DAVIDSON.

In this action for judicial review brought pursuant to C.R.C.P. 106(a)(4), plaintiff, James Ward, appeals from the judgment of the district court determining that defendant, the Civil Service Commission of the City and County of Denver, properly disqualified him as a police officer based on certain federal gun control legislation. We affirm.

Beginning in 1994, Congress enacted a series of statutes designed to combat domestic violence. In the 1996 Lautenberg Amendment to the Federal Gun Control Act, 18 U.S.C. § 921, et seq. (the Act), Congress prohibited individuals convicted of a misdemeanor crime of domestic violence from possessing a firearm. *See* Nelson, *The Lautenberg Amendment: An Essential Tool for Combating Domestic Violence*, 74 N.D. L.Rev. 365 (1999). Military and law enforcement officers, who are exempt from most federal gun control statutes, are no longer exempt under the Act. *See* Gregory, *The Lautenberg Amendment: Gun Control in the U.S. Army*, 2000 Army Law. 3 (2000). Despite challenges, constitutional and otherwise, the Act has survived judicial scrutiny. *See* Nathan, *At the Intersection of Domestic Violence and Guns: The Public Interest Exception and the Lautenberg Amendment*, 85 Cornell L.Rev. 822 (2000).

Plaintiff, a Denver police officer, was convicted in 1994 under the Edgewater Municipal Code of a misdemeanor domestic assault against his wife. In 1999, the Bureau of Alcohol, Tobacco, and Firearms issued an opinion stating that, because of this conviction, plaintiff could not possess a firearm.

Consequently, the Denver police department disqualified plaintiff from employment.

Plaintiff appealed this decision to the Denver Civil Service Commission, which upheld the disqualification. Plaintiff then filed this C.R.C.P. 106 action in district court, alleging that the Commission's decision was arbitrary, capricious, and without jurisdiction because: (1) his assault conviction did not constitute a "misdemeanor crime of domestic violence" under the Act; and (2) he had not knowingly and intelligently waived his right to a jury trial as required by the Act. The district court upheld defendant's decision, and plaintiff appeals. We disagree, as did the district court, with both of plaintiff's contentions.

I.

The Act, in pertinent part, makes it unlawful for any person:

who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(9).

As relevant here, the Act defines a "misdemeanor crime of domestic violence" as an offense that "has, as an element, the use or attempted use of physical force." 18 U.S.C. § 921(a)(33)(A)(ii).

Plaintiff was convicted of "assault, domestic violence," under Edgewater Municipal Code § 15–41, which provides that: "It is unlawful for any person to knowingly or recklessly cause bodily injury to another person or with criminal negligence cause bodily injury to another."

Plaintiff argues that his assault conviction cannot be a "misdemeanor crime of domestic violence" under § 921(a)(33). Plaintiff appears to concede that knowingly or recklessly causing physical bodily injury could include, as an element, the use or attempted use of physical force. However, he asserts, § 15–41 does not necessarily contain the element of use or attempted use of

physical force, because it can be violated in a nonviolent manner. For example, plaintiff suggests, criminal negligence resulting in bodily injury, such as failing to lock a gate surrounding a swimming pool when young children are nearby, would fall under the scope of the ordinance but would not necessarily entail acts of physical violence. Thus, he argues, because it is not apparent from § 15–41 that his assault conviction involved the use of force, it does not constitute a "misdemeanor crime of domestic violence."

Moreover, plaintiff asserts that according to *Taylor v. United States*, 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), and *United States v. William Maurice Smith*, 171 F.3d 617 (8th Cir.1999), it is impermissible to look beyond the predicate offense to the underlying acts to determine whether the required elements were present.

We agree with plaintiff that § 15–41 is broad enough to be violated without the use of physical force. However, the inclusiveness of § 15–41 notwithstanding, defendant properly concluded that plaintiff had been convicted of a misdemeanor crime of domestic violence under § 921(a)(33).

In *Taylor v. United States, supra*, in the context of the enhanced sentencing provisions of the Career Criminals Amendment Act of 1986, 18 U.S.C. § 924(e), the Supreme Court considered whether the defendant's prior burglary conviction qualified as a violent felony, despite the defendant's contention that the conviction did not contain an element required to establish a violent felony: conduct that presented a serious potential risk of physical injury to another. The Court reasoned that, because Congress intended all of the crimes listed in that statute to have the common characteristic of use or risk of use of force, Congress intended burglary to refer to its generic meaning, which requires entry into a building.

The Court then held that, in determining whether a prior offense is a violent felony for enhancement purposes, the sentencing court ordinarily should limit itself to the fact of conviction and the statutory definition of the prior offense.

Recognizing, however, that some statutes contain a single section covering multiple crimes, some of which are "violent" and some of which are not, the Court allowed the sentencing court to look to the indictment or information and jury instructions to determine whether the defendant was convicted of a "violent" felony or some other type of offense. *See Taylor v. United States, supra. See also United States v. Spell*, 44 F.3d 936 (11th Cir.1995) (a district court may inquire into the conduct surrounding a conviction only if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself); *United States v. Winter*, 22 F.3d 15, 18 (1st Cir.1994) ("if the statutory description ... blankets both violent and non-violent crimes, a court may peek beneath the coverlet"); *United States v. Richard Eugene Smith*, 10 F.3d 724 (10th Cir.1993) (a court may look beyond the statutory count of conviction to resolve potential ambiguity caused by a broad state statute).

However, when the context provides no jury instructions, such as here, sentencing courts can use other means to determine the precise crime underlying the prior conviction. For example, courts have looked at charging papers, judgments of conviction, plea agreements, other statements by the defendant for the record, presentence reports adopted by the court, findings by the court, and other easily produced and evaluated court documents. *See United States v. Shepard*, 231 F.3d 56 (1st Cir.2000); *United States v. Bonat*, 106 F.3d 1472 (9th Cir.1997); *United States v. Farnsworth*, 92 F.3d 1001 (10th Cir.1996); *United States v. Palmer*, 68 F.3d 52 (2d Cir.1995); *United States v. Spell, supra; United States v. Richard Eugene Smith, supra.*

This approach has been applied to convictions under the Act. *See United States v. William Maurice Smith, supra.* In *Smith*, relied on but misread by plaintiff, the defendant had pled guilty to a misdemeanor assault that could have been committed in alternative ways, one involving physical force and one not. The court determined that, under *Taylor*, it was appropriate to look at the charging documents as a whole to deter-

mine the precise crime to which the defendant had pled guilty. Those documents clearly indicated that the defendant had been charged with and convicted of an offense containing an element of physical force, which was sufficient as a predicate offense under the Act. Contrary to plaintiff's argument, an analysis under *Smith* does not require that a statute be physically divided into discrete subsections.

Thus, we use the *Smith* approach here and, as did the court there, conclude that the assault committed by defendant involved the use of force and, therefore, was a "misdemeanor crime of violence" under the Act.

Specifically, the summons and complaint charged plaintiff with a violation of § 15–41—Assault, Domestic Violence. The incident reports of the Edgewater Police Department alleged that plaintiff had pushed his pregnant wife into a wall, causing cuts and bruises to her hand and foot and causing her to fall on her stomach. Also, the transcript of the taped-recorded ruling of the trial court reflects that the only issue at trial was whether the incident, which clearly involved the use of force, had or had not occurred. By its guilty verdict, the court determined that it had.

## II.

■ The Act also provides that a person shall not be considered to have been convicted of a misdemeanor crime of domestic violence unless the case was tried by a jury, or unless the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise. 18 U.S.C. § 921(a)(33)(B)(II).

Plaintiff argues that he did not knowingly and intelligently waive his right to a jury trial. Plaintiff asserts that a valid waiver must affirmatively appear in the record. Here, he maintains, no such waiver can be inferred, and therefore he has not been convicted of a domestic violence offense.

On this issue, the district court upheld the hearing officer's finding that the combination of failing to file a written jury demand and proceeding to a bench trial with counsel

amounted to a knowing and intelligent waiver of the right to a jury trial. We agree.

The Colorado Municipal Court Rules, which govern here, provide that a defendant must both file a written jury demand and pay a $25 jury fee, or the right to a jury trial is waived. C.M.C.R. 223. Here, although plaintiff paid the $25 jury fee, he did not file a written jury demand.

■ Generally, a defendant must affirmatively waive a jury trial; however, a waiver based on the failure to file a jury demand under C.M.C.R. 223 also can meet due process requirements. In *Christie v. People,* 837 P.2d 1237 (Colo.1992), the supreme court held that so long as the defendant was duly informed, his inaction would be considered intentional conduct. "Thus, the prerequisite of a written demand is a simple device which informs the court of the defendant's actual decision to exercise his right to a jury trial, while the lack of a written demand indicates to the court that the right has been knowingly waived." *Christie v. People, supra,* 837 P.2d at 1244.

■ Furthermore, if the defendant was represented by counsel, we must presume counsel was aware of the court's procedural rules. *See Christie v. People, supra; see also People v. Norman,* 703 P.2d 1261 (Colo. 1985).

Here, the record indicates that plaintiff appeared at his arraignment on May 24, 1994, without counsel. According to plaintiff, he retained counsel shortly thereafter and, upon his attorney's advice, paid $25 to preserve his right to a jury trial.

However, when plaintiff and his attorney appeared at trial and were informed that, because no written demand had been filed, trial would be to the court, they did not request a continuance, seek immediate relief under C.A.R. 21, or seek other redress. Indeed, in his affidavit, plaintiff's attorney simply explained that, although he and his client had expected a jury trial, "we continued with a trial to the court rather than [a] jury trial." Moreover, although plaintiff later filed a motion for reconsideration, he did not mention the jury trial issue. Nor did plaintiff file an appeal or seek any postconviction relief.

Although it appears that a tape recording was made of the trial proceedings, plaintiff has provided no record from the municipal court of any objection made prior to the trial. *See People v. Fowler,* 183 Colo. 300, 516 P.2d 428 (1973) (in the absence of record evidence to the contrary, we assume that the waiver of a jury trial is knowing and voluntary).

Accordingly, as the district court found, the record supports the hearing officer's determination that, by failing to file a written jury demand and proceeding to a bench trial with counsel, plaintiff knowingly and intelligently waived his right to a jury trial for the purposes of the Act.

The judgment is affirmed.

RULAND and KAPELKE, JJ., concur.