UNITED STATES

v.

**Senior Airman Bobby L. SMITH,**
**United States Air Force.**

ACM 34144.

U.S. Air Force Court of Criminal Appeals.

Sentence Adjudged 26 April 2000.

Decided 18 Dec. 2001.

Appellate Counsel for Appellant: Lieutenant Colonel Beverly B. Knott, Lieutenant Colonel Timothy W. Murphy, and Captain Kyle R. Jacobson.

Appellate Counsel for the United States: Colonel Anthony P. Dattilo, Major Lance B. Sigmon, and Captain Peter J. Camp.

Before BURD, BRESLIN, and HEAD, Appellate Military Judges.

## OPINION OF THE COURT

BRESLIN, Senior Judge:

The appellant was convicted, in accordance with his pleas, of making a false official statement, in violation of Article 107, UCMJ, 10 U.S.C. § 907, assaulting another airman by pointing an unloaded firearm at him, in violation of Article 128, 10 U.S.C. § 928, communicating a threat to another airman, in violation of Article 134, UCMJ, 10 U.S.C. § 934, and violating 18 U.S.C. § 922(g)(9) by possessing a firearm after being convicted of a misdemeanor crime of domestic violence, also in violation of Article 134, UCMJ. A military judge sitting alone sentenced the appellant to a bad-conduct discharge, confinement for 10 months, and reduction to E–1. The convening authority approved the sentence adjudged, but granted clemency and reduced the period of confinement to 8 months.

The appellant now alleges a variety of errors, focusing on the providence of his guilty plea to violating 18 U.S.C. § 922(g)(9). The appellant argues: 1) The military judge erred in finding that he was convicted of a misdemeanor crime of domestic violence under 18 U.S.C. § 922(g)(9); 2) That a conviction under 18 U.S.C. § 922(g)(9) is an unconstitutional violation of his due process rights;

3) That 18 U.S.C. § 922(g)(9) does not and cannot constitutionally apply to non-commercial possession of a firearm; 4) That his plea cannot be provident where the predicate offense does not require the use of force and had no interstate commerce nexus; and, 5) That 18 U.S.C. § 922(g)(9) unconstitutionally denies the appellant his right to keep and bear arms under the Second Amendment to the Constitution. In a different vein, he also asks that we return the record to determine whether the trial defense counsel reviewed the transcript before authentication, as required by Rule for Courts–Martial (R.C.M.) 1103(i)(1)(B). We find no prejudicial error and affirm. Article 59(a), UCMJ, 10 U.S.C. § 859(a).

### Providence of Plea to Violating 18 U.S.C. § 922(g)(9).

The appellant offered to plead guilty, obtained a favorable pretrial agreement (PTA), stipulated to his guilt, repeatedly assured the military judge of the legal and factual basis for his guilt, received the benefit of the PTA, and thereafter sought and obtained additional clemency based in part upon his plea. Now the appellant claims he is not guilty of violating 18 U.S.C. § 922(g)(9) because his conviction for disorderly conduct is not a misdemeanor crime of domestic violence. However, prevailing case law does not support the appellant's argument.

The appellant purchased a Smith & Wesson .40 caliber handgun in July 1999, and had a laser sight mounted on the top. In August 1999, the appellant struck his wife during a domestic dispute. He was originally charged in state court in Ohio with domestic violence, in violation of Ohio Revised Code (O.R.C.) 2919.25A. Pursuant to a plea agreement, he was convicted of the lesser crime of disorderly conduct, a misdemeanor in the fourth degree, in violation of O.R.C. 2917.11. On 14 January 2000, he was apprehended in possession of the Smith & Wesson handgun.

The appellant was charged with violating 18 U.S.C. § 922(g)(9) (known as the Lautenberg Amendment) by possessing a firearm after being convicted of a misdemeanor crime of domestic violence. 18 U.S.C. § 922(g)(9) provides, in pertinent part, "It shall be unlawful for any person ... who has been

convicted in any court of a misdemeanor crime of domestic violence, to ... possess in or affecting commerce, any firearm...."

18 U.S.C. § 921(a)(33)(A) defines "misdemeanor crime of domestic violence" as an offense that:

(i) is a misdemeanor under Federal or State law; and

(ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim.

The appellant pled guilty to this charge. The military judge properly advised him of the elements of the crime, and the appellant assured her that it correctly described what he did. Specifically, the appellant and counsel stipulated that his "conviction in an Ohio court in September 1999 meets the definition of a misdemeanor crime of domestic violence." The military judge accepted the appellant's plea.

During the sentencing portion of the trial, the prosecution offered the record of the appellant's misdemeanor conviction. After reviewing the exhibit, the military judge reopened the providence inquiry to determine whether the appellant's conviction for disorderly conduct, a misdemeanor in the fourth degree, constituted a "misdemeanor crime of domestic violence" under the federal law. The military judge concluded that the appellant's conviction for disorderly conduct "is legally equivalent to an offense that is a misdemeanor crime of domestic violence, because the Ohio statute that you were convicted under includes an element of the use or attempted use of physical force or threatened use of a deadly weapon." The appellant and his counsel concurred in the analysis, and reiterated the appellant's desire to plead guilty to this offense. The military judge found the appellant guilty in accordance with his pleas.

The appellant now argues that the underlying conviction for disorderly conduct was not a "misdemeanor crime of domestic violence" because it did not require, as an element of the offense, either that the victim was a family member or that the crime involved an act of violence. He acknowledges his earlier admissions, but maintains the legal sufficiency of the underlying conviction was a matter of law solely within the purview of the military judge. Indeed, questions about the elements of a predicate offense are issues of law we review de novo. *Salve Regina College v. Russell,* 499 U.S. 225, 231, 111 S.Ct. 1217, 113 L.Ed.2d 190 (1991); *United States v. Shover,* 45 M.J. 119, 122 (1996).

We must first determine the elements of the predicate misdemeanor offense. As noted above, a "misdemeanor crime of domestic violence" under 18 U.S.C. § 921(a)(33)(A) is one which "has, as an element, the use or attempted use of physical force ... committed by a current or former spouse...." It is clear the drafters intended the use or attempted use of force as an element; it is less clear whether the domestic relationship was intended to be a required element of the predicate offense, or a separate matter proved independently.

The starting point for interpretation of a statute is the language of the statute itself. *United States v. Gonzales,* 520 U.S. 1, 6, 117 S.Ct. 1032, 137 L.Ed.2d 132 (1997); *Consumer Product Safety Com. v. GTE Sylvania, Inc.,* 447 U.S. 102, 108, 100 S.Ct. 2051, 64 L.Ed.2d 766 (1980). We look first to the plain meaning of the words. *Salinas v. United States,* 522 U.S. 52, 57, 118 S.Ct. 469, 139 L.Ed.2d 352 (1997). Unfortunately, the provision in question is not "a model of draftsmanship." *United States v. Meade,* 175 F.3d 215, 226 (1st Cir.1999). On one hand, the focus is clearly on the act of physical force; on the other hand, the domestic relationship appears to be an integral part of the requirement. Other courts that have examined this issue concluded that the plain language of the statute indicated that the predicate misdemeanor need have only one element: the use or attempted use of physical force. *United States v. Chavez,* 204 F.3d

1305, 1313–14 (11th Cir.2000); *Meade,* 175 F.3d at 219; *United States v. Smith,* 171 F.3d 617, 620 (8th Cir.1999); *United States v. Thomson,* 134 F.Supp.2d 1227, 1230 (D.Utah 2001). We are not persuaded that the language is clear and unambiguous.

When a statute is ambiguous, we may consider the legislative history to determine Congress' intent. *Rubin v. United States,* 449 U.S. 424, 430, 101 S.Ct. 698, 66 L.Ed.2d 633 (1981). While no committee discussion is available on this matter, statements made by Senator Lautenberg on the Senate floor are helpful. Senator Lautenberg noted "the ban applies to crimes that have, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon." 142 Cong. Rec. S 10377, S 11872. "Convictions for domestic violence-related crimes often are for crimes, such as assault, that are not explicitly identified as related to domestic violence." *Smith,* 171 F.3d at 620 (quoting Sen Lautenberg, 142 Cong. Rec. S 11872–01). *See United States v. Smith,* 964 F.Supp. 286, 291 (N.D.Iowa 1997) (discussing legislative history). Examining the legislative history, we conclude that Congress intended that the predicate offense requires one element: the use or attempted use of physical force. *See also Smith,* 171 F.3d at 620; *Meade,* 175 F.3d at 218. Of course, proof of the domestic relationship is also required under § 921(a)(33); however, the fact of that relationship need not have been an element of the predicate misdemeanor offense.

We must next determine whether the appellant's conviction for disorderly conduct satisfies the requirement that the offense have as an element the use or attempted use of physical force. The appellant points out that, under Ohio law, the offense of disorderly conduct can be committed in a variety of ways—some involve the use of physical force and some do not. He asserts the disorderly conduct conviction does not necessarily contain the element of use or attempted use of physical force, because the state statute can be violated in other ways.

In *Taylor v. United States,* 495 U.S. 575, 110 S.Ct. 2143, 109 L.Ed.2d 607 (1990), in the context of the enhanced sentencing provisions of the Career Criminals Amendment Act of 1986, codified at 18 U.S.C. § 924(e), the Supreme Court held that, in determining whether a prior offense is a violent felony for enhancement purposes, the sentencing court ordinarily should limit itself to the fact of conviction and the statutory definition of the prior offense. Recognizing, however, that some statutes contain a single section covering multiple crimes, some of which are "violent" and some of which are not, the Court allowed the sentencing court to look to the indictment or information and jury instructions to determine whether the defendant was convicted of a "violent" felony or some other type of offense. *Taylor,* 495 U.S. at 602, 110 S.Ct. 2143. *See also United States v. Spell,* 44 F.3d 936 (11th Cir.1995) (if ambiguities in the judgment make the crime of violence determination impossible from the face of the judgment itself, court may inquire into the conduct surrounding a conviction); *United States v. Winter,* 22 F.3d 15, 18 (1st Cir.1994) ("if the statutory description ... blankets both violent and non-violent crimes, a court may peek beneath the coverlet"); *United States v. Smith,* 10 F.3d 724 (10th Cir.1993) (a court may look beyond the statutory count of conviction to resolve potential ambiguity caused by a broad state statute). Courts have also looked at charging papers, judgments of conviction, plea agreements, other statements by the defendant for the record, presentence reports adopted by the court, findings by the court, and other easily produced and evaluated court documents. *Ward v. Tomsick,* 30 P.3d 824, 826 (Colo. App.2001), *cert. denied,* 2001 Colo. LEXIS 743 (Colo. Sep 10, 2001) (and cases cited therein). Courts also use this approach to inquire about convictions under 18 U.S.C. § 921(a)(33). *See Smith,* 171 F.3d at 620–21.

In this case, the military judge reviewed the charging documents to determine the nature of the offense that formed the basis of the appellant's disorderly conduct conviction. These documents demonstrate the conviction was based upon the appellant's physical assault upon his wife. More significantly, the appellant informed the military judge that his act of physical force against his wife was the basis for his conviction. We find the appellant was convicted of an offense contain-

ing an element of physical force, which was sufficient as a predicate offense under the Act.

*Constitutionality of 18 U.S.C. § 922(g)(9)*

█ The appellant attacks the constitutionality of 18 U.S.C. § 922(g)(9) in several ways. In reviewing such claims, we presume that acts of Congress are constitutional. "[W]e invalidate a congressional enactment only upon a plain showing that Congress has exceeded its constitutional bounds." *United States v. Morrison,* 529 U.S. 598, 607, 120 S.Ct. 1740, 146 L.Ed.2d 658 (2000). The standard of review for constitutional claims is de novo. *Jacobellis v. Ohio,* 378 U.S. 184, 190, 84 S.Ct. 1676, 12 L.Ed.2d 793 (1964); *United States v. Napier,* 233 F.3d 394, 397 (6th Cir.2000).

█ The appellant argues the statute is an unconstitutional violation of his due process rights, because he was not adequately put on notice that possession of the firearm subjected him to prosecution. The appellant cites *United States v. Ficke,* 58 F.Supp.2d 1071, 1075 (D.Neb.1999) and *United States v. Emerson,* 46 F.Supp.2d 598, 613 (N.D.Tex.1999), *rev'd,* 270 F.3d 203 (5th Cir.2001), to support this argument. We do not agree.

The majority of federal courts have rejected this argument. *Napier,* 233 F.3d at 397–98; *United States v. Kafka,* 222 F.3d 1129, 1131–32 (9th Cir.2000), *cert. denied,* —— U.S. ——, 121 S.Ct. 1365, 149 L.Ed.2d 293 (U.S. 2001); *United States v. Beavers,* 206 F.3d 706, 709–10 (6th Cir.2000), *cert. denied,* 529 U.S. 1121, 120 S.Ct. 1989, 146 L.Ed.2d 815 (2000); *United States v. Reddick,* 203 F.3d 767, 769–71 (10th Cir.2000); *Meade,* 175 F.3d at 225–26; *United States v. Bostic,* 168 F.3d 718, 722–23 (4th Cir.1999), *cert. denied,* 527 U.S. 1029, 119 S.Ct. 2383, 144 L.Ed.2d 785 (1999); *United States v. Wilson,* 159 F.3d 280, 288–89 (7th Cir.1998), *cert. denied,* 527 U.S. 1024, 119 S.Ct. 2371, 144 L.Ed.2d 774 (1999). First, people are presumed to know the law. *Cheek v. United States,* 498 U.S. 192, 199, 111 S.Ct. 604, 112 L.Ed.2d 617 (1991). In any event, the appellant's conviction of a domestic violence offense sufficiently placed him on notice that the government might regulate his ability to own or possess a firearm. The appellant's reliance on the Supreme Court's decision in *Staples v. United States,* 511 U.S. 600, 114 S.Ct. 1793, 128 L.Ed.2d 608 (1994) is also misplaced. The Supreme Court's holding in *Staples* was directed at awareness of the facts upon which criminality turns (i.e., whether a firearm met the definition of a machine gun), not at awareness of the illegality of the conduct.

█ The appellant also argues that 18 U.S.C. § 922(g)(9) cannot be constitutionally applied to him because Congress did not have the authority to legislate where there is no nexus with interstate commerce. He notes there is no evidence the appellant ever used his firearm in interstate commerce and that the evidence only showed the firearm was shipped in interstate commerce before the appellant bought it. Citing *United States v. Lopez,* 514 U.S. 549, 115 S.Ct. 1624, 131 L.Ed.2d 626 (1995) and *Jones v. United States,* 529 U.S. 848, 120 S.Ct. 1904, 146 L.Ed.2d 902 (2000), the appellant maintains that the "passive, passing, or past connection to commerce" is insufficient. *Jones,* 529 U.S. at 855, 120 S.Ct. 1904. We do not find this argument persuasive.

Unlike the statute at issue in *Lopez,* 18 U.S.C. § 922(g) expressly requires the government to prove that the firearm was "shipped or transported in interstate or foreign commerce"; was "possessed in or affected commerce"; or was received after having been "shipped or transported in interstate or foreign commerce." 18 U.S.C. § 922(g). It has long been held that the government need only prove that the firearm in question moved in interstate commerce at any time to meet its burden of proving that it was used in or affected commerce. *Gillespie v. City of Indianapolis,* 185 F.3d 693, 706 (7th Cir. 1999), *cert. denied,* 528 U.S. 1116, 120 S.Ct. 934, 145 L.Ed.2d 813 (2000); *Wilson,* 159 F.3d at 286–87; *United States v. Barry,* 98 F.3d 373, 378 (8th Cir.1996); *United States v. Wells,* 98 F.3d 808, 811 (4th Cir.1996) (and cases cited therein). Unlike the arson statute at issue in *Jones,* 18 U.S.C. § 922(g) does not contain the "use" requirement that was central to the decision in that case. The decision in *Jones* does not suggest that the Supreme Court is retreating from its opinion

that § 1202(a), the predecessor of § 922(g)(1), required only "the minimal nexus that the firearm ha[d] been, at some time, in interstate commerce." *Scarborough v. United States,* 431 U.S. 563, 575, 97 S.Ct. 1963, 52 L.Ed.2d 582 (1977); *Napier,* 233 F.3d at 400.

■ Finally, the appellant argues that 18 U.S.C. § 922(g)(9) is unconstitutional because it violates his personal rights under the Second Amendment to the United States' Constitution to "keep and bear arms." We find no merit in this argument.

In *United States v. Miller,* 307 U.S. 174, 178, 59 S.Ct. 816, 83 L.Ed. 1206 (1939), the Supreme Court ruled that the right to keep and bear arms protected by the Second Amendment must have "some reasonable relationship to the preservation or efficiency of a well regulated militia." Federal courts have held that this is a "collective right" rather than an individual right. *See Napier,* 233 F.3d at 402 (and cases cited therein). The appellant has not alleged, much less demonstrated, that his possession of the Smith & Wesson handgun in this case had any relationship to the preservation and efficiency of a well-regulated militia.

The appellant continues to assert that the right to keep and bear arms is an individual right. He cites *Emerson,* 46 F.Supp.2d at 610, and *United States v. Emerson,* 270 F.3d 203 (5th Cir.2001) (reversing the lower court), to support this argument. The debate over this concept is complex and fascinating; however, it is not necessary for this Court to plumb its depths in this case. Regardless of whether the right conferred by the Second Amendment is "individual" or "collective," the right to keep a firearm does not mean that the possession cannot be lawfully regulated. *Lewis v. United States,* 445 U.S. 55, 65 n. 8, 100 S.Ct. 915, 63 L.Ed.2d 198 (1980) (restriction on possession of firearms by felon does not "trench upon any constitutionally protected liberties"); *Napier,* 233 F.3d at 402–03; *United States v. Johnson,* 497 F.2d 548, 550 (4th Cir.1974). Clearly Congress has the power to regulate the interstate trade in firearms, and may act to stem the flow of guns to those whose convictions for domestic violence offenses reflect a propensity to inflict bodily harm upon others. *Gillespie,* 185 F.3d at 706.

### Post-trial Processing—Examining the Record of Trial

■ The record of trial was served upon the defense counsel prior to authentication by the military judge by delivering a copy to the defense paralegal, who signed acknowledging receipt. There is no document indicating the trial defense counsel examined the record of trial. However, it appears that trial defense counsel later assisted the appellant in obtaining clemency. The appellant contends we should return the record of trial to determine whether the trial defense counsel examined the record of trial before authentication. We decline.

R.C.M. 1103(i)(1)(B) provides, "Except when unreasonable delay will result, the trial counsel shall permit the defense counsel to examine the record before authentication." By serving the record of trial upon the defense counsel prior to authentication by the military judge, trial counsel did all that is required.

A finding or sentence of a court-martial may not be held incorrect on the ground of an error of law unless the error materially prejudices the substantial rights of the accused. Article 59(a), UCMJ, 10 U.S.C. § 859(a). The appellant has not demonstrated any prejudice in the alleged failure to have the defense counsel review the record of trial prior to authentication. We find no prejudice.

The findings are correct in law and fact, and no error prejudicial to the substantial rights of the appellant occurred. Article 66(c), UCMJ, 10 U.S.C. § 866(c); *United States v. Turner,* 25 M.J. 324, 325 (C.M.A. 1987). Accordingly, the findings and sentence are

AFFIRMED.