BISSELL, Circuit Judge.
 

 The State of New Mexico appeals from a judgment of the United States Claims Court,
 
 New Mexico v. United States,
 
 11 Cl.Ct. 429 (1986), dismissing New Mexico’s complaint. We affirm.
 

 BACKGROUND
 

 Under the Mineral Leasing Act of 1920, ch. 85, 41 Stat. 437 (codified as amended at 30 U.S.C. §§ 181 et seq. (1982 & Supp. Ill 1985)), Congress authorized the Secretary of the Interior to lease certain federally owned lands containing oil or gas deposits to parties who would extract these resources. Lessors under this Act pay a royalty to the government of not less than 12V2% of the amount or value of the production of the resources removed or sold from the leased land. 30 U.S.C. § 226(b), (c). All royalty payments, furthermore, are paid in the form of oil or gas. § 192. Following the sale of the oil and gas, the Secretary of the Interior pays the proceeds received from the royalties into the United States Treasury. § 191. Thereafter, pursuant to 30 U.S.C. § 191, the Secretary of the Treasury pays 50% of those proceeds to the States where the leased lands are located, 40% to a reclamation fund, and 10% to a miscellaneous receipts fund.
 

 In 1980, Congress enacted the Crude Oil Windfall Profit Tax Act of 1980 (Windfall Profit Tax Act), Pub.L. No. 96-223, 94 Stat. 229 (codified as amended in scattered sections of 26 U.S.C.), which imposes a tax on windfall profits realized from the extraction of domestic oil. 26 U.S.C. § 4986 (1982). Congress enacted this tax in conjunction with the deregulation of domestic oil prices. S.Rep. No. 394, 96th Cong., 1st Sess. 6,
 
 reprinted in
 
 1980 U.S.Code Cong.
 
 &
 
 Admin.News 410, 417. The windfall profit tax is levied on the difference between the market price of oil after decontrol, and the adjusted base price of oil before decontrol.
 
 See
 
 26 U.S.C. §§ 4987-4989 (1982 & Supp. Ill 1985); S.Rep., at 29, U.S.Code Cong. & Admin.News 1980, p. 438. The tax is collected by the first purchaser of the oil withholding from the purchase price an amount equal to the tax imposed, and then remitting this amount to the Treasury. 26 U.S.C. § 4995(a)(1). The parties do not dispute, and we agree, that federal royalty oil is subject to the windfall profit tax.
 
 See
 
 § 4991(b)
 
 *
 
 .
 

 
 *267
 
 New Mexico originally brought this suit in the United States District Court for the District of New Mexico, claiming that the United States had improperly paid the state its share of federal royalties from post-tax royalties, rather than from pre-tax royalties. The district court found for New Mexico.
 
 New Mexico v. Regan,
 
 No. 81-452-M, slip op. (D.N.M. June 8, 1983). The United States appealed to the United States Court of Appeals for the Tenth Circuit, which held that the district court lacked jurisdiction, and transferred the case to the United States Claims Court.
 
 New Mexico v. Regan,
 
 745 F.2d 1318 (10th Cir.1984),
 
 cert. denied,
 
 471 U.S. 1065, 105 S.Ct. 2138, 85 L.Ed.2d 496 (1985).
 

 On December 30, 1986, the Claims Court denied New Mexico’s motion for partial summary judgment, and granted the United States’ motion for summary judgment, holding that the payments should be made on a post-tax royalty basis. The court reasoned that the windfall profit tax is imposed-upon oil, New Mexico’s interest in the royalty does not become fixed until the royalty is converted into money by sale, and, therefore, New Mexico can only receive a share of the post-tax royalty.
 
 New Mexico,
 
 11 Cl.Ct. at 433-36. This appeal followed.
 

 OPINION
 

 Section 35 of the Mineral Leasing Act states in pertinent part that:
 

 All money received from ... royalties ...; 50 per centum thereof shall be paid ... to the State other than Alaska within the boundaries of which the leased lands or deposits are or were located____
 

 30 U.S.C. § 191. New Mexico argues that under the “clear and unambiguous” language of § 35, its 50% payments should be computed on the gross amounts of federal royalties before the windfall profit tax is deducted from those royalties. Further, New Mexico argues that the Windfall Profit Tax Act cannot leave it with only 50% of post-tax royalties because that Act does not expressly purport to amend the Mineral Leasing Act. Nevertheless, not only does ordinary logic mandate that federal royalties must first be reduced by payment of the tax in question, but the intent of Congress in subjecting federal royalties to the windfall profit tax confirms this.
 

 It is well-recognized that the goal of statutory interpretation is to effectuate as nearly as possible the will of the legislature.
 
 See HCSC-Laundry v. United States,
 
 450 U.S. 1, 6-8, 101 S.Ct. 836, 838-39, 67 L.Ed.2d 1 (1981);
 
 Central Tablet Mfg. Co. v. United States,
 
 417 U.S. 673, 689-91, 94 S.Ct. 2516, 2525-26, 41 L.Ed.2d 398 (1974);
 
 United States v. American Trucking Associations, Inc.,
 
 310 U.S. 534, 543-49, 60 S.Ct. 1059, 1063-67, 84 L.Ed.2d 1345 (1940). The legislative history of the Windfall Profit Tax Act, examined below, reveals that Congress’ purpose in taxing federal royalties was to reduce payments to the states.
 

 Although the House, Senate, and Conference Committee reports for the Windfall Profit Tax Act do not discuss why Congress taxed federal royalties, the legislative debates give us clear guidance. Senator Long, Chairman of the Senate Committee that considered the Windfall Profit Tax Act, S.Rep. No. 394, 96th Cong., 1st Sess. II (1979), and member of the Conference Committee that crafted a compromise between the House and Senate versions, 126 Cong.Rec. 5840 (1980), originally introduced an amendment in the Senate to exempt federal royalties from taxation, but yielded on that amendment in conference.
 
 Id.
 
 at 5839. In the following colloquy on the Senate floor concerning the Conference Committee bill, Senator Long explained why he took this action:
 

 Mr. WALLOP. Federal royalty oil, including oil production from the national petroleum reserves, and royalties from Federal leases is subject to taxes under
 
 *268
 
 the bill, and the conference agreement would follow the House bill with respect to royalties on oil. Am I misconstruing what the conference report has adopted?
 

 Mr. LONG. I believe what we are talking about there was we put an amendment on the bill, and I believe I played a part in this — yes, I offered the amendment — and we thought we were simply affirming the existing practice when we did it. We did not think that we ought to tax the Federal royalty. We did not think there was any point in doing it. It would just be taking the money out of one pocket and putting it in another pocket. We did not think we should tax the royalty payments to the Federal Government from Federal lands. That would be the Federal Government taxing the Federal Government at that point.
 

 I offered an amendment to say that would not be the case. The Senator from Missouri (Mr. Danforth) inquired about the matter. He wanted to be sure that we were not changing the situation then before the Senate. My impression at that time was that we were not.
 

 When we got to conference with it, the point was made that this did have the effect of changing that situation and it would make it work out differently than it would have worked out in the absence of the amendment. Therefore, we yielded on the amendment merely because we felt, or I know that I felt, that to do otherwise would be not to keep the faith, when one said we were not changing the situation then before the Senate when we offered the amendment and later on when it appeared that the situation was changed.
 

 Mr. WALLOP. What I do not understand is that the Mineral Leasing Act of 1920 gave the States 50 percent royalty and now they have the 50 percent royalty less the windfall profit tax. It seems to me we changed the existing law and did not stand by it.
 

 Mr. LONG. I will be glad to look into the matter further and advise the Sena-tor____
 

 126 Cong.Rec. 5,839-40 (1980).
 

 On the next day, Senator Long responded more specifically to Senator Wallop’s concerns:
 

 Mr. LONG. Mr. President, on yesterday we discussed the matter of tax on Federal royalties. I explained to the Senator from Wyoming (Mr. Wallop) that I would get more information on the subject and make it available to him.
 

 At the time that I offered the amendment to exempt Federal royalties from the tax, the Senate had agreed that there would be no amendments which would involve substantial revenue losses or gains. At that time, there was no exemption for Federal royalties in the Senate bill, and I assured the Senator from Missouri that my amendment to exempt Federal royalties would not increase or decrease the revenues from the bill or which accrue to the States. At that time, I also assured the Senator that if I learned anything to the contrary that the Senate amendment could be changed in conference.
 

 During the conference, it came to our attention that one-half of Federal royalties are paid to the States. Thus, exempting Federal royalties would have the effect of increasing the amount of oil going to the States without taxation. This, contrary to my strongest intentions and desires that State royalties not be affected by the tax, breached the commitment to the Senator from Missouri and to other Senators. Thus, the Senate receded in the conference on this point____
 

 126 Cong.Rec. 6062-63 (1980). Other statements made during debate confirm that Congress intended the states to get their share of federal royalties on an after-tax basis. 126 Cong.Rec. 6193-94, 6637-38 (1980).
 

 Senator Long’s statements on the floor are a particularly reliable indication of congressional intent. As already noted, Senator Long was both the Chairman of the
 
 *269
 
 Senate Committee that originally considered the Windfall Profit Tax Act, and a Conference Committee member. He introduced the amendment to exempt federal royalties, and then withdrew it in conference. Senator Long’s explanation for the deletion of this amendment is entitled to substantial weight.
 
 See United States v. Dickerson,
 
 310 U.S. 554, 558-61, 60 S.Ct. 1034, 1036-38, 84 L.Ed. 1356 (1940) (relying on statement to House by Conference Committee member about Conference Committee bill as persuasive of congressional intent);
 
 Duplex Printing Press Co. v. Deering,
 
 254 U.S. 443, 475, 41 S.Ct. 172, 179, 65 L.Ed. 349 (1921) (stating that remarks by floor manager of bill during debate, who was also member of committee reporting on bill, may be regarded as supplementing committee report); 2A Sutherland Statutory Construction § 48.14 (4th ed. 1984). Absent contradictory evidence in the legislative history, we hold that Senator Long’s comments are the best indication of congressional intent.
 

 The foregoing establishes that Congress did not want the states to obtain a windfall through inflated royalties that would accrue from the deregulation of the price of oil. To prevent this, Congress subjected federal royalties to the windfall profit tax. If we were to decide, as appellant would have us, that New Mexico’s share of federal royalties is computed on a pre-tax basis, we would thwart the purpose of Congress. Consequently, we must hold that New Mexico’s share of federal royalties is computed on a post-tax basis.
 

 We have considered appellant’s other arguments, and find them to be without merit. Therefore, we affirm the judgment of the Claims Court.
 

 AFFIRMED.
 

 *
 

 26 U.S.C. § 4991(b) specifies the exemptions from the windfall profit tax. The only two relevant exemptions are those for “any crude oil from a qualified governmental interest ...", § 4991(b)(1), and for "exempt royalty oil." § 4991(b)(5). The qualified governmental interest exemption does not apply because under § 4994(a)(1)(A), only states with an economic interest in crude oil qualify, and the parties here agree that New Mexico has no interest in the royalty oil itself, but only in the proceeds. The exempt royalty oil exemption does not apply
 
 *267
 
 because only qualified royalty owners may claim this, § 4994(f)(1), and under § 6429(d)(1), the United States is not a qualified royalty owner. Therefore, no exemptions apply, and the United States' federal royalty oil is subject to the windfall profit tax. The legislative history clearly confirms this conclusion. H.R.Conf. Rep. No. 817, 96th Cong., 2d Sess. 107,
 
 reprinted in
 
 1980 U.S.Code Cong. & Admin.News 642, 660.