James A. WHITE, Jr., Petitioner,

v.

**DEPARTMENT OF JUSTICE,**
Respondent.

No. 02–3329.

United States Court of Appeals,
Federal Circuit.

May 12, 2003.

Thomas H. Roberts, Thomas H. Roberts & Associates, P.C., of Richmond, Virginia, argued for petitioner.

Harold D. Lester, Jr., Assistant Director, Commercial Litigation Branch, Civil Division, Department of Justice, of Washington, DC, argued for respondent. With him on the brief were David M. Cohen, Director; and Erin E. Powell, Trial Attorney.

Before MAYER, Chief Judge, MICHEL and PROST, Circuit Judges.

Opinion for the Court filed by Circuit Judge MICHEL. Dissenting opinion filed by Chief Judge MAYER.

MICHEL, Circuit Judge.

James A. White, Jr. petitions for review of a final decision by the Merit Systems Protection Board ("Board") sustaining the action by the Department of Justice removing him from his position as a GS–07 Correctional Officer at the Federal Bureau of Prisons, Federal Correctional Institution, Petersburg, Virginia. *White v. Dep't of Justice*, No. DC–0752–01–0556–I–1, 2002 WL 1018567 (M.S.P.B. May 13, 2002). Because we conclude that White must be deemed to have been convicted of "a misdemeanor crime of domestic violence" under 18 U.S.C. § 921(a)(33) and that Warden Joseph M. Brooks ("the Warden"), the deciding official, therefore correctly concluded that White was prevented by 18 U.S.C. § 922(g)(9) from meeting the requirement of his position description that he be legally eligible, annually re-certified and authorized to carry a firearm, the Board's decision is in accordance with law. As the Board's decision also is supported by substantial evidence, we affirm.

## Background

On November 16, 2000, White pled guilty to a February 2000, misdemeanor

simple assault, Virginia Code Section 18.2–57, of Sonja Miles, with whom he had a close personal relationship. Section 922(g)(9) makes it a criminal offense for those who have been convicted of "a misdemeanor crime of domestic violence" to possess or receive firearms. On February 21, 2001, White was issued a notice of proposed removal. On May 15, 2001, White was removed from his position by the Warden on behalf of the Department of Justice ("the agency") based on a charge of "Loss of Qualifications–Inability to Possess a Firearm." On review of White's "adverse action file" and White's reply to the proposed removal, the Warden concluded that it was illegal for White to carry a firearm and that he therefore could not perform the full range of his duties as a prison guard. *See White v. Dep't of Justice*, No. DC–0752–01–0556–I–1, slip op. at 2 (M.S.P.B. Sept.27, 2001) ("Initial Decision"). Before the Board, White challenged, inter alia, the conclusion that his conviction was for a "misdemeanor crime of domestic violence" under § 922 since he was convicted only of simple assault after the original charge of domestic assault was reduced prior to his plea of guilty. He also maintained that even if such a conviction generically so qualified, his own factual circumstances did not warrant such a conclusion because his relationship with Ms. Miles would not, under Virginia law, be considered a common-law marriage. *Id.*

The Board upheld the agency's decision because of clear evidence of White's job requirement to carry a firearm, of his spouse-like relationship with Ms. Miles, and of his misdemeanor assault conviction. According to the Board, the petitioner's position description showed that he would, on occasion, "be authorized to carry firearms and to use physical force, including deadly force, to maintain control of inmates." *Id.* at 3. In addition, he was required annually to be re-certified for firearms proficiency. From this, the Board concluded that the legal disability to meet this job requirement created a sufficient nexus between the efficiency of the service and the agency's action for the Board to sustain the removal under 5 U.S.C. § 7513. *Id.* at 12. The Board also concluded that the agency's choice of removal as the penalty was reasonable under § 7513, based on all of the evidence, including a review of the deciding official's decision letter and hearing testimony, both to the effect that White's inability to meet this condition of continued employment left no alternative but removal. *Id.* at 13. The foundations of the Board's holding were that 18 U.S.C. § 921(a)(33), which defines what constitutes "a misdemeanor crime of domestic violence," encompassed White's conviction and that neither § 921 nor § 922 was unconstitutionally vague. *Id.* at 7.

### Discussion

This appeal requires two different inquiries. First, as a threshold matter, we must analyze and construe the operative term of § 922(g)(9), "of domestic violence," which is defined in § 921(a)(33), to determine whether § 922(g)(9) applied to and, therefore, constrained White. This threshold inquiry actually has two subparts: (A) construing the meaning of the statutory definition; and (B) determining factually its applicability to White. Beyond this threshold matter, the second inquiry, and the real heart of this case, is whether or not the Board's decision affirming the Warden's removal of White was otherwise proper. Although affected by the results of our first inquiry, this second inquiry requires separate analysis under personnel

law, as this is an appeal over a personnel action, and not a criminal conviction under § 922.

## I.

## A.

■ We first address whether White's conviction for simple assault rather than domestic violence meets the definition in § 921(a)(33) of "a misdemeanor crime of *domestic* violence" as that term is used in § 922 (emphasis added), given the ample, separate proof that the victim of White's assault was his long-time paramour. If so, then he is constrained by § 922. White, however, argues that he is not so constrained in view of his "acquittal" on the charge of misdemeanor domestic violence (Virginia Code Section 18.2–57.2) and guilty plea only to the reduced charge of misdemeanor simple assault (Virginia Code Section 18.2–57). We conclude that he is mistaken. Reviewing the grammar of § 921(a)(33)(A)(ii) and reading the statute in light of clear and explicit legislative history compel us to conclude, as have other circuits, that the statute includes convictions for crimes that do not incorporate a domestic relationship *as an element,* so long as the agency's proof establishes a domestic relationship as described in § 921(a)(33)(A)(ii), because in light of the legislative history the only statutorily-required element is violence or the threat thereof.

Section 922(g)(9) prohibits certain convicts from receipt or possession of a firearm, providing:

> (g) It shall be unlawful for any person—
>
> . . . .
>
> (9) who has been convicted in any court of *a misdemeanor crime of domestic violence,*

to ship or transport in interstate or foreign commerce, or *possess* in or affecting commerce, any firearm or ammunition; or *to receive any firearm* or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(9) (2000) (emphases added). A "misdemeanor crime of domestic violence" is defined in 18 U.S.C. § 921(a)(33) as:

> (33) (A) Except as provided in subparagraph (C), the term "misdemeanor crime of domestic violence" means an offense that—
>
> (i) is a misdemeanor under Federal or State law; and
>
> (ii) *has, as an element, the use or attempted use of physical force,* or the threatened use of a deadly weapon, *committed* by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, *by a person who is cohabiting with or has cohabited with the victim as a spouse,* parent, or guardian, *or by a person similarly situated* to a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33) (2000) (emphases added).

Whether § 921(a)(33)(A)(ii) requires that a domestic relationship be an element of the crime is not a question of first impression nationally, but it is for our court. The government has brought to our attention a significant and consistent body of case law in other circuits addressing that very issue. For example, in *United States v. Barnes,* 295 F.3d 1354, 1360–61 (D.C.Cir. 2002), the United States Court of Appeals for the District of Columbia Circuit set forth an exhaustive linguistic analysis of

the text of the statute to determine whether the plain meaning of the text requires that the offense on which § 922(g)(9) criminal liability is predicated must itself include, as an element, the domestic relationship described in § 921(a)(33)(A)(ii). The use in § 921(a)(33)(A)(ii) of the singular word "element" instead of the plural, and the impossibility of the clause in § 921(a)(33)(A)(ii) beginning with "committed" to be construed as modifying the clause beginning with "the use or attempted use" are among the grammatical indications cited by the court. *Id.* at 1358, 1360. Specifically the court reasoned that:

> [it] must determine if "committed by" *can,* consistent with its meaning, modify "use of force." The verb "commit" means "to do (something wrong or reprehensible), to perpetrate, be guilty of (a crime or *offence,* etc.)." *Oxford English Dictionary* 559 (2d ed.1989)(emphasis added). The *use* of force is not "committed," "done" or "perpetrated." An *"offense"* is "committed" or "perpetrated." And here, the offense of a "misdemeanor crime of domestic violence" must be committed by a person in one of the specific relationships. Subpart (ii) of section 921(a)(33)(A) is not a complete sentence—subsection 921(a)(33)(A) is itself one sentence that begins with "except as otherwise provided in subparagraph (C), the term 'misdemeanor crime of domestic violence' means an offense that—" and continues through subparts (i) and (ii). In short, a "misdemeanor crime of domestic violence" means an offense that is a misdemeanor, has, as an element, the use of force and was committed by a person with the requisite relationship. An illustration using simpler language demonstrates the point. If the statute read
>
> "larceny means an offense that has, as an element, monetary gain, committed by a person ...,"

it would be obvious that "committed" modifies "offense" and that monetary gain is the only "element." Just as "monetary gain" is not "committed," the "use of force" is not "committed." The "offense" is "committed."

*Id.* at 1360 (emphasis in original and footnotes omitted). The court then relied on the analysis that "[t]he fact that the Congress somewhat awkwardly included the 'committed by' phrase in subpart (ii) (instead of adding a subpart (iii)) is not significant in view of the unnatural reading that would result if 'committed by' were construed to modify 'use of force.'" *Id.* at 1361. The court, thus, deemed itself compelled to conclude that "section 921(a)(33)(A)'s language plainly requires only one element, *i.e.,* the use of force." *Id.* at 1362.

■ The *Barnes* court also considered, first, the purpose of the statute—concluding that the defendant's construction would "render the law a nullity in a majority of the states as well as at the Federal level" because their penal codes do not define any crimes having a domestic relationship as an element—and, second, the explanation of Senator Lautenberg in offering the amendment that became this provision. *Id.* at 1364. Senator Lautenberg explained the "as an element language" was directed to the force component of § 921(a)(33)(A)(ii) in order to replace the language "crime of violence," which was seen as too vague:

> Under the final agreement, the ban applies to crimes that have, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon. This is an improvement over the earlier version, which did not explicitly include within the ban crimes involving an attempt to use force, or the

threatened use of a weapon, if such an attempt or threat did not also involve actual physical violence. In my view, anyone who attempts or threatens violence against a loved one has demonstrated that he or she poses an unacceptable risk, and should be prohibited from possessing firearms.

142 Cong. Rec. 26675 (1996). Senator Lautenberg also directly addressed the applicability of § 922 to crimes not having a domestic relationship as an element in saying:

Mr. President, the final agreement does not merely make it against the law for someone convicted of a misdemeanor crime of domestic violence from possessing firearms. It also incorporates this new category of offenders into the Brady law, which provides for a waiting period for handgun purchases. Under the Brady law, local law enforcement authorities are required to make reasonable efforts to ensure that those who are seeking to purchase a handgun are not prohibited under Federal law from doing so. Mr. President, convictions for domestic violence-related crimes often are for crimes, *such as assault, that are not explicitly identified as related to domestic violence*. Therefore, it will not always be possible for law enforcement authorities to determine from the face of

someone's criminal record whether a particular misdemeanor conviction involves domestic violence, as defined in the new law.

*Id.* (emphasis added). Senator Lautenberg's statements are relevant because he was the author of the disputed language in his amendment to the bill. *See id.* at 26674. His statements are entitled to probative weight as to the meaning of the terms he employed in the amendment, as statements by a non-authoring congressperson would not be.[1] Based on these two grounds along with the grammatical analysis, the court concluded that § 921(a)(33)(A)(ii) requires only that the use of force or threat thereof must be an element of the predicate offense. *Id.* at 1368.

We can see no error in the *Barnes* analysis of either the plain meaning of the statute or the intent of Congress in enacting the statute. Nor has White identified any. Indeed, although *Barnes* was heavily relied upon in the government's response brief, White's reply brief failed to distinguish or even cite it. Although only persuasive, not binding, authority to us, we find the reasoning of *Barnes* convincing. Moreover, while *Barnes* is a criminal case, not a personnel case as ours is, we nevertheless find it applicable here. Therefore, we adopt the reasoning of *Barnes*, as we

---

1. Even though courts should be "extremely wary of testimony before committee hearings and debates on the floor of Congress," we may make an exception for "precise analyses of statutory phrases by the sponsors of the proposed laws." *See S & E Contractors, Inc. v. U.S.*, 406 U.S. 1, 13 n. 9, 92 S.Ct. 1411, 31 L.Ed.2d 658 (1972). *See also Glaxo Operations UK Ltd. v. Quigg*, 894 F.2d 392, 398 (Fed.Cir.1990) (acknowledging that a sponsor's remarks should be afforded some weight as to the meaning of a bill but that this weight is only justified when the remarks are direct-

ed to the intended meaning of particular words in a statute) (citing *Regan v. Wald*, 468 U.S. 222, 237, 104 S.Ct. 3026, 82 L.Ed.2d 171 (1984)); *State of New Mexico v. United States*, 831 F.2d 265, 269 (Fed.Cir.1987) (holding that absent contradictory evidence in the legislative history, comments on the floor about the deletion of an amendment by a senator who was both the chairman of the Senate committee that originally considered the relevant act and a conference committee member are the best indication of congressional intent).

are free to do, rather than deferring to it as precedent.

Moreover, arriving at the same conclusion, and equally persuasive are four other circuits' decisions: *United States v. Kavoukian*, 315 F.3d 139, 144–45 (2d Cir. 2002) (reversing the dismissal of an indictment under § 922(g)(9) on the basis that a state conviction for Menacing in the Second Degree does constitute a predicate under the statute and because this understanding comes from the plain language of the statute, the rule of lenity is inapplicable); *United States v. Chavez*, 204 F.3d 1305, 1313–14 (11th Cir.2000) (concluding that conviction under a federal general assault statute for U.S. territories can be a "misdemeanor crime of domestic violence"); *United States v. Meade*, 175 F.3d 215, 218–19 (1st Cir.1999) (holding that the defendant's state misdemeanor conviction under a general assault and battery statute, for assaulting his spouse is a "misdemeanor crime of domestic violence"); *United States v. Smith*, 171 F.3d 617, 620 (8th Cir.1999) (holding that "while § 921(a)(33) requires proof of a domestic relationship, it only requires the predicate misdemeanor to have one element: the use or attempted use of physical force" and therefore that conviction under an Iowa misdemeanor simple assault statute for the defendant's assault of the mother of his child constituted a "misdemeanor crime of domestic violence"). Indeed, no circuit has held to the contrary.

Petitioner offers us no reason why the consistent interpretation of these five other circuits is incorrect. In fact, petitioner mentions only one of these cases, *United*

*States v. Smith*, 964 F.Supp. 286 (N.D.Iowa 1997), and then only generally, and only the district court opinion. He contends that the district court's construction of the statute (which is consistent with the circuit court opinions) is incorrect because "[s]uch a reading impermissibly expands the reach of the penal code, fails to strictly construe the statute against the government and produces an absurd result removing the domestic element only to throw it back in with an explanation resembling a slight of hand." This argument lacks the specificity necessary to even hint at possible error in any of the other circuits' analyses, much less persuade us to diverge from their well-supported conclusions. In our view, the other circuits *did* strictly construe the statute—so there is no expansion—and the analyses actually show that it is White's result, not the other circuits', that would be "absurd" because the statute would be ineffectual in the majority of states and in federal enclaves. *See, e.g., Barnes*, 295 F.3d at 1364 n. 12, 1364–65. The petitioner's extensive arguments for *why* this statute, like all criminal laws, must be strictly construed—as opposed to explaining *how* these other courts (and the Board here) erred in arriving at their strict constructions—are, thus, not helpful.

We too hold that § 921(a)(33) requires only that the use or attempted use of physical force (or the threatened use of a deadly weapon) be an element of the predicate misdemeanor offense, and the existence of a domestic relationship need not be an element.[2] Rather, it may be proven independently during the personnel action litigation.

---

**2.** This holding in no way relieves a prosecutor's burden to prove to a jury beyond a reasonable doubt that a criminal defendant had a domestic relationship as defined in § 921(a)(33)(A)(ii) in order to win a conviction under § 922(g)(9). Petitioner's citation of the rule that "[t]he Constitution gives a criminal defendant the right to have a jury

## B.

■ The next question then is whether the criminal statute as construed applies to White in his capacity as a federal employee. White appears to argue that on its face § 921 is unconstitutionally vague (and therefore void) because, he urges, it fails to put a person of ordinary intelligence on notice regarding what behavior is proscribed. He also specifically argues that, as applied to him, the Board's interpretation of the statutes is unconstitutionally vague and violates White's right to due process because the phrasing of § 921 "does not give a person of ordinary intelligence a reasonable opportunity to know that although he was acquitted of the misdemeanor crime of domestic violence he is deemed to have been convicted of that very crime."

■ Other circuits have also already addressed such arguments, and, again, more than satisfactorily. An alternate possible interpretation of the statutory text "does not by itself establish vagueness"; rather, the test is "whether it 'either forbids or requires the doing of an act in terms so vague that men of common intelligence must necessarily guess at its meaning and differ as to its application.'" *Barnes*, 295 F.3d at 1366 (quoting *United States v. Lanier*, 520 U.S. 259, 266, 117 S.Ct. 1219,

137 L.Ed.2d 432 (1997)). We see no such problem with this statute. Rather, we agree with the *Barnes* and *Smith* courts that "we would be hard pressed to find an individual of common, or even not so common, intelligence who could not determine whether he was in one of the enumerated relationships when he committed a misdemeanor crime including an element of physical force," and that the statute is, therefore, not void for vagueness. *Barnes*, 295 F.3d at 1366 (quoting *Smith*, 171 F.3d at 623). We conclude that § 921(a)(33) is sufficiently clear to require us to reject White's facial vagueness attack.[3]

■ Also, contrary to White's argument about the statute as applied to him, no one at any stage of these personnel proceedings has relied on any other conviction or "deemed [him] to have been convicted" of the original misdemeanor that was amended by the prosecutor from domestic assault to simple assault. The only conviction the Board relied upon to conclude that White is prohibited from possessing or receiving a firearm is the one for simple assault. This is entirely appropriate. As *Smith* explains, the existence in the state penal code of an alternate misdemeanor that specifically incorporates a domestic relationship element does not make § 921 vague because "[t]he fact that [the defendant] could have been convicted under two

---

determine, beyond a reasonable doubt, his guilt of every element of the crime with which he is charged," *United States v. Gaudin*, 515 U.S. 506, 522–23, 115 S.Ct. 2310, 132 L.Ed.2d 444 (1995), is, therefore, also inapt. White is not a criminal defendant, but simply a federal employee removed from his position.

3. White presented hearsay evidence during the Board hearing that persons employed by the Virginia State Police informally informed him that he could carry a weapon. Initial Decision, slip op. at 9. This "evidence" is

irrelevant to the question of vagueness for numerous reasons, but the most important of these reasons is that the subjective understanding of a couple of persons (who, in this case, may or may not have known all of the relevant facts) has never been a test of unconstitutional vagueness of a statute. White offers no precedent suggesting otherwise. Similarly, White's actual purchase of a weapon also lacks any probative value regarding the question of whether or not he was legally permitted to do so.

misdemeanor statutes, one of which was arguably more applicable to the proscribed conduct, does not negate notice that conviction under the other similarly relevant misdemeanor statute could also serve as a predicate offense for § 922(g)(9)." 171 F.3d at 623. Thus, we too conclude that this statute is not unconstitutionally vague simply because Virginia too has two assault offenses, either of which fits White's conduct.

The petitioner's additional arguments of how the Board erred in concluding that § 922 applied to him are equally unconvincing. For example, the petitioner highlights a post-conviction Virginia state court finding in a domestic relations case about his relationship with Ms. Miles. The petitioner, however, poorly represents the nature of the court's finding (by truncating the quotation) and also misinterprets its significance. The Circuit Court of the City of Richmond found that "Mr. White is not a person with a relationship to Ms. Miles *to confer authority over this court to award a protective order to present [sic] family abuse.*" [4] *Miles v. White,* No. HN–1999–A (Va.Cir.Ct. Dec. 27, 2000) (order dismissing petition for protective order) (emphasis added). That finding was clearly in the context of whether a protective order was *then* necessary. Thus, the court sought only to determine whether there was a relationship *at the time the protective order was requested* in December of 2000. In contrast, White's March 2000 assault conviction was based on an incident that occurred earlier, on February 15, 2000. In determining whether White's conviction was of a "misdemeanor crime of domestic violence" under § 921(a)(33), we

conclude, the only legally relevant time period here is that *prior to* the February incident. The statute, in fact, refers to a *"current or former* spouse, parent, ..." and "a person who *is cohabitating* with *or has cohabitated* with" and does not require a present or permanent relationship. 18 U.S.C. § 921(a)(33)(A)(ii) (emphases added). The finding of the Virginia court in its December 2000 order, thus, has no effect here.

White also argues that the Board's finding that White "cohabitated with the victim as a spouse" or was "a person similarly situated to a spouse" was unsupported by substantial evidence. This argument is almost frivolous because the factual finding about White's relationship with Ms. Miles is overwhelmingly supported. The Board cited Ms. Miles' *uncontradicted* testimony that she lived with White continuously from August 1998 to June 1999 in the only residence either *maintained,* and thereafter maintained an intermittent relationship with him until the February 2000 incident, including a period from November 1999 to February 2000 in which White stayed "up to 5 days/nights a week with her," although maintaining a separate residence. Initial Decision, slip op. at 7–9. This suggests continuous, complete cohabitation for at least ten months, and substantial cohabitation for close to a year and a half prior to the assault. The Board also referred to numerous details of Miles' testimony that tended to show that the nature of the relationship was "as a spouse," or at least similar to a spousal relationship, including expectations of fidelity and monogamy, shared expenses, shared household responsibilities, social activities in common, and

---

**4.** The petitioner's brief quoted only an excerpt, explaining "[a]dditionally, a Virginia court found that White and the victim were not in a domestic relationship, stating 'It further finds that Mr. White is not a person with a relationship to Ms. Miles ....' " (citation omitted).

discussions about having children. *Id.* The Board also specifically found that although the petitioner did testify during the Board hearing, he "did not address, much less deny, the factual statements that were made by Ms. Miles in her testimony concerning the period of August 1998 to June 1999 during which she stated that they [lived] together."[5] *Id.* at 9. Therefore, because the evidence cataloged in the Board opinion is more than sufficient to prove by a preponderance the necessary domestic relationship and because White points to no specific defect in the Board's reliance on that evidence, we conclude that the Board's ultimate finding of a spousal or spousal-like relationship was supported by at least substantial evidence for at least the period between August 1998 and June 1999.

## II.

Having concluded that § 922 does constrain White, we now turn to the correctness of the Board's conclusion that the Warden's decision to remove White was lawful. In order to sustain a removal based on the interaction of a prior simple assault conviction with § 922 of the federal penal code for any employee who is required at work to carry a firearm, an agency, if challenged before the Board, must simply prove the domestic nature (here, spouse-like) of the employee's relationship with the victim as of the time of the assault, or anytime before the assault. We hold that the Board correctly sustained the Warden's decision that White's legal disability to lawfully possess a fire-

arm constituted a "Loss of Qualifications" and warranted removal. The Board's decision was correct both because it was supported by substantial evidence and because it was "in accordance with law." *See* 5 U.S.C. § 7703(c) (2000). Specifically, all of the circumstances of White's conviction and relationship with Ms. Miles constitute substantial evidence supporting the Board's decision to sustain the removal. The Warden was not obligated to wait for White actually to commit or be investigated or arrested for a violation of § 922 to conclude that he was not permitted by law to carry a firearm. In fact, it was incumbent on the Warden to remove any person who is unable to perform the full range of required duties because he or she is prohibited under § 922(g) from possessing a firearm, as here.

## A.

The petitioner argues that the Board's decision was not in accordance with law because he cannot be found guilty of a "misdemeanor crime of domestic violence" (as defined in § 921(a)(33)) because he was "acquitted" of the Virginia state charge of misdemeanor domestic violence.[6] Petitioner's argument is misdirected because the Board did not purport to find him guilty of *any* offense. The Board's conclusion that the Warden correctly determined that petitioner was prohibited from carrying a firearm (because in carrying a firearm he would be committing a criminal act as a result of his earlier conviction) was based on a correct understanding of the law. Specifically, the

---

**5.** The Board made no explicit finding about the petitioner's statements regarding the later time periods.

**6.** The prosecutor amended the misdemeanor domestic violence charge before the plea. Thus, petitioner was not actually "acquitted," as acquittal requires trial. But certainly he was not convicted of domestic assault, either.

Board held that "the appellant failed to meet a condition of, or qualification for, employment by being unable [sic, meaning legal disability] to possess any firearm or ammunition," and as a result, "the agency established by preponderant evidence the merits of its charge." Initial Decision, slip op. at 12. The Board's decision actually did not assume that the petitioner would be convictable for violating § 922. The legal prohibition, in any event, makes his removal lawful since he was obligated to be qualified to possess a firearm by his job requirements. The Board's decision did not rest on the domestic violence offense of which he was "acquitted." Contrary to what White argues then, there was no violation of due process, or unconstitutional double-jeopardy effect. Even assuming that White had been "acquitted" of one offense, moreover, does not make his removal based on conviction of another "wrongful," as the *Smith* court noted.

White also argues that the Board's decision was not in accordance with law based on the assertion that he was retried in a proceeding without the benefit of a jury or an attorney as required by § 921(a)(33)(B)(i).[7] As the government explains in its brief, however, White was not retried for domestic violence or any other crime before the Board. Rather, the Board merely analyzed the circumstances surrounding White's conduct that resulted in the previous state court conviction (at which he was represented by counsel, formally waived the right to a jury trial, and pleaded guilty) to ascertain whether White met the federal statutory definition of a person who had cohabitated as if a spouse with the victim. He did. White's conviction, thus, met the definition of § 921(a)(33)(B)(i). Moreover, White had counsel at every stage of the personnel proceedings as well. This argument, thus, has no support in the record.

■ White makes an additional challenge to the Board's decision, arguing that § 922 is void on its face as unconstitutionally vague because it does not give him sufficient notice. This challenge, however, is particularly inapt in the context of our review of the *Board's* action because White was not charged with violating § 922 before the Board. Rather, it is a removal action taken by the Warden that the Board reviewed and sustained. White's notice as to that action was more than complete. Indeed, White makes no challenge to the notice of proposed removal or the decision letter. With respect to the crime that is the predicate of the removal, misdemeanor simple assault, petitioner cannot have been unclear that assault upon any person, much less one with whom he had a close, personal relationship, was behavior proscribed by penal statute and that conviction thereof would have serious repercussions. If he is arguing that he was unaware that conviction for such behavior disqualifies him to carry a firearm, then his argument is irrelevant. First, everyone is presumed to know the

7. The text of § 921(a)(33)(B)(i) states:

A person shall not be considered to have been convicted of such an offense for purposes of this chapter [18 U.S.C. §§ 921 et seq.], unless—

(I) the person was represented by counsel in the case, or knowingly and intelligently waived the right to counsel in the case; and

(II) in the case of a prosecution for an offense described in this paragraph for which a person was entitled to a jury trial in the jurisdiction in which the case was tried, either

(aa) the case was tried by a jury, or

(bb) the person knowingly and intelligently waived the right to have the case tried by a jury, by guilty plea or otherwise.

penal statutes. Second, any subjective lack of awareness of all of the exact legal consequences cannot make the Warden's removal decision unlawful where the likelihood of there being some adverse effect on his job was absolutely clear. The prohibition on unconstitutional vagueness does not require specific, advance knowledge of the precise nature of all legal disabilities visited on those ultimately convicted of crimes.

Finally, even if there were inadequate notice in his *job description* over the requirement that he must be legally and technically qualified to carry a firearm (see discussion of the sufficiency of the evidence demonstrating the requirements of White's position suggesting no such inadequacy, *post* ), it would not render the controlling criminal *statute* in any way unconstitutional. Nor need a job description contain constitutionally sufficient notice for criminal purposes because a job description, unlike a criminal statute, cannot form the foundation for punishment, only removal.

### B.

■ Finally, regarding White's various arguments asserting insubstantiality of the evidence supporting the Board's decision to sustain his removal for failure to remain qualified for his job, we are also uncon-

vinced. White contends, for example, that there was no evidence that he was "unable to possess a firearm" or that he had a "loss of qualifications" because § 922 only prohibits receiving firearms "shipped or transported in interstate or foreign commerce," or possession "in or affecting commerce." As the government explains, White cannot challenge upon appeal what he failed to challenge before the Board. *See, e.g., Bosley v. Merit Sys. Prot. Bd.*, 162 F.3d 665, 668 (Fed.Cir.1998). The Board noted that White "did not challenge the presumption that he would, in the course of his duties as a correctional officer, likely be required to possess a firearm and ammunition that had, at some point in time, traveled in interstate commerce." Initial Decision, slip op. at 7. Therefore, in the face of White's failure to make such arguments earlier, we will not consider any error in the Board's decision based on this argument, for it is deemed waived.[8]

White's argument that the Board inappropriately shifts the agency's burden to prove the charges against an employee does not suggest that we should alter this holding either. Although the Board's use of the word "presumption" is inaccurate, it is at most harmless error. The agency did present evidence (and the Board considered the evidence) about the requirements of White's position: namely, the copy of White's position description, including a

---

**8.** Case law suggests only three circumstances under which this court will not observe the rule that arguments not presented to the Board cannot be raised on appeal: (1) where an argument challenging statutory construction requires no review of factual evidence, no reliance on agency expertise, and no exercise of administrative discretion; (2) where an argument represents a constitutional challenge to the agency's action; and (3) where making an argument to the Board would be an exercise in futility because the Board's view of its lack of authority to review the question is well-settled. *Beard v. GSA*, 801 F.2d 1318, 1321 (Fed.Cir.1986). As none of these circumstances apply to White's argument—an analysis of his argument *would* require a review of factual evidence, his argument is *not* constitutional in nature, and there is *no* suggestion that it would have been futile for White to make his argument to the Board— there is no reason not to treat his argument as waived.

requirement of annual certification of firearms proficiency. *Id.* at 3–4. White's burden-shifting argument would only be valid if the agency had not offered evidence establishing a prima facie case that White was required to receive and possess a firearm as a requirement of his job, but it did. The Board explained that:

> The agency filed a copy of the appellant's position description showing that, inter alia, he would, on occasion, "be authorized to carry firearms and to use physical force, including deadly force, to maintain control of inmates." He was required to successfully complete training on "firearms proficiency," and to maintain and demonstrate proficiency in the "use of firearms such as the shotgun, assault rifle, pistol, and revolver." Finally, annual certification of such proficiency was mandatory, "in order to maintain employment."

*Id.* (citations omitted).

Moreover, if White's argument is centered not on deficiencies in the proof about his job requirements, but rather concerns the interstate commerce requirement of the statute, then the argument is simply on its face unconvincing. If White is suggesting that the Warden provide White a firearm and ammunition that never traveled in interstate commerce, such an argument must be rejected as wholly impractical. Not only would it be virtually impossible to find firearms or ammunition that did not have the very minimal contacts with interstate commerce required by § 922(g)(9), but also, in requiring correctional officers to be qualified to carry a gun, the Department of Justice must have also assumed that these correc-

tional officers would be able to use and possess *any* gun or *any* ammunition because, as a practical matter, those who are expected to use firearms in emergency situations cannot be under the obligation to first ascertain the provenance of the firearms or ammunition given to them and to then decline to use all but a few.

We have considered all of White's other arguments and find them similarly unpersuasive.[9]

## Conclusion

For the foregoing reasons—and particularly because the agency provided to the Board ample and uncontradicted proof of a domestic relationship of a spousal nature as described by § 921(a)(33)(A)(ii)—we affirm the Board's decision upholding the Department of Justice's removal of White.

*AFFIRMED.*

MAYER, Chief Judge, dissenting.

Because, contrary to the court, 18 U.S.C. § 921(33)(A)(ii) (2000) requires violation of a domestic violence statute as a predicate element, I dissent. Section 922(g) makes it unlawful for any person who has been convicted of a misdemeanor crime of domestic violence to possess a firearm. A misdemeanor crime of domestic violence is defined in Section 921(33)(A)(ii) as a misdemeanor under federal or state law which "has, *as an element,* the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a

---

9. White did not renew before us any arguments about the lack of recognition of common-law marriage under Virginia domestic relations law and we, therefore, do not consider them.

child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to a spouse, parent, or guardian of the victim." (Emphasis added).

Statutory construction begins with the plain language of the statute. *Robinson v. Shell Oil Co.,* 519 U.S. 337, 340, 117 S.Ct. 843, 136 L.Ed.2d 808 (1997). The plain language here clearly and unambiguously requires that the *misdemeanor* "[have], as an element," a domestic component. The court should look beyond the plain meaning of the statute only if the language is ambiguous or if a literal interpretation would frustrate the purpose behind the statute. *Bob Jones Univ. v. United States,* 461 U.S. 574, 586, 103 S.Ct. 2017, 76 L.Ed.2d 157 (1983). Neither is the case here.

Nevertheless, the purpose of the statute is consistent with a literal reading. The purpose is to prevent people convicted of crimes of domestic violence from possessing a firearm. 142 Cong. Rec. D927–02, *D928 (1996). Had White been convicted under Virginia's domestic violence statute, he would have been prevented from possessing a firearm. The court relies on *United States v. Barnes,* 295 F.3d 1354 (D.C.Cir.2002), for the proposition that to adopt the literal construction would render the law a nullity in a majority of states. That may be a reason for Congress to rewrite the law, but no such argument was presented to us. It is also irrelevant because Virginia has a domestic violence statute.

The court looks to congressional intent and concludes that the statute should not be given its literal meaning. But if Congress had intended for administrative officials to probe the facts of an underlying misdemeanor to determine the domestic relationship of the victim, it could easily have said so. Simply replacing "has as an element" with "the underlying facts show," or similar language, would have been sufficient.

In the case before us, White was charged with both misdemeanor assault and misdemeanor domestic violence and acquitted of the domestic violence charge. So the charge which had domestic violence as an element was dismissed. In the face of the long standing injunction to construe penal statutes narrowly, *Mourning v. Family Publ'n Serv., Inc.,* 411 U.S. 356, 375, 93 S.Ct. 1652, 36 L.Ed.2d (1973), it is perverse to base a dismissal from the service on the very charge not proved before a judge and jury, but resurrected by an administrative judge.