**Eugene R. EIBLER, Plaintiff**

v.

**DEPARTMENT OF TREASURY, BUREAU OF ALCOHOL, TOBACCO AND FIREARMS, et al., Defendants**

No. 1:03CV1560.

United States District Court,
N.D. Ohio,
Eastern Division.

Jan. 30, 2004.

Louis J. Carlozzi, Carlozzi & Associates, Cleveland, OH, for Eugene R. Eibler, Plaintiff.

Lynne Haddad Buck, Office of the U.S. Attorney, Northern District of Ohio, Cleveland, OH, for Department of Treasury ATF, Nicholas Vouvalis, Defendants.

### ORDER

OLIVER, District Judge.

Pending before the court is Defendant United States' ("Defendant") Motion for Summary Judgment (ECF No. 17).[1] For the reasons outlined below, the Motion is granted.

### I. FACTS

In March 1998, Plaintiff Eugene Eibler ("Eibler") was indicted on felony charges of assault and felonious assault. Eibler pled guilty to, and was convicted of, misdemeanor assault in violation of Ohio Revised Code § 2903.13. On April 3, 2002, Eibler attempted to purchase a firearm from a local gun shop but was denied the purchase. Shortly thereafter, he received a letter from Special Agent Nicholas Vouvalis on behalf of the Department of Treasury, Bureau of Alcohol, Tobacco and Firearms ("ATF"), notifying him that under the Brady Bill, 18 U.S.C. § 922(g)(9), he was prohibited from purchasing or possessing weapons based on his prior conviction for domestic violence. On July 24, 2003, Eibler filed the instant action, alleging that he was improperly denied a firearm purchase based on the erroneous information provided to the gun shop from the National Instant Criminal Background Check System ("NICS").

### II. SUMMARY JUDGMENT STANDARD

Federal Rule of Civil Procedure 56(c) governs summary judgment motions and provides:

> The judgment sought shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law . . . .

In reviewing summary judgment motions, this court must view the evidence in a light most favorable to the non-moving party to determine whether a genuine issue of material fact exists. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970); *White v. Turfway Park Racing Ass'n, Inc.*, 909 F.2d 941, 943–44 (6th Cir.1990). A fact is "material" only if its resolution will affect the outcome of the lawsuit. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). Determination of whether a factual issue is "genuine" requires consideration of the applicable evidentiary standards. Thus, in most civil cases the Court must decide "whether reasonable jurors could find by a prepon-

---

1. Defendants Department of Treasury, Bureau of Alcohol, Tobacco and Firearms and Special Agent Nicholas Vouvalis have been dismissed from this action. *See* ECF No. 11.

derance of the evidence that the [non-moving party] is entitled to a verdict." *Id.* at 252, 106 S.Ct. 2505.

Summary judgment is appropriate whenever the non-moving party fails to make a showing sufficient to establish the existence of an element essential to that party's case and on which that party will bear the burden of proof at trial. *Celotex,* 477 U.S. at 322, 106 S.Ct. 2548. Moreover, "the trial court no longer has a duty to search the entire record to establish that it is bereft of a genuine issue of material fact." *Street v. J.C. Bradford & Co.,* 886 F.2d 1472, 1479–80 (6th Cir.1989) (citing *Frito–Lay, Inc. v. Willoughby,* 863 F.2d 1029, 1034 (D.C.Cir.1988)). The non-moving party is under an affirmative duty to point out specific facts in the record as it has been established which create a genuine issue of material fact. *Fulson v. City of Columbus,* 801 F.Supp. 1, 4 (S.D.Ohio 1992). The non-movant must show more than a scintilla of evidence to overcome summary judgment; it is not enough for the non-moving party to show that there is some metaphysical doubt as to material facts. *Id.*

### III. LAW AND ANALYSIS

Eibler brings this action pursuant to 18 U.S.C. § 925A, alleging that he was wrongfully denied a firearm purchase. In his sole claim for relief, Eibler alleges that he was never convicted of a crime of domestic violence and therefore his firearm purchase should have been approved. Defendant seeks summary judgment on this claim, arguing that Eibler's 1998 conviction for assault qualifies as a domestic violence offense under 18 U.S.C. § 922(g)(9).

Under 18 U.S.C. § 925A, a person denied a firearm due to a NICS error, or who was not prohibited from possessing a firearm under § 922(g), may sue the United States for an order directing that the error be corrected or that the transfer of the weapon be approved.[2] Section 922(g)(9) prohibits certain convicts from receipt or possession of a firearm. The section provides:

> (g) It shall be unlawful for any person—
>
> \*    \*    \*    \*    \*    \*
>
> (9) who has been convicted in any court of a misdemeanor crime of domestic violence, to ship or transport in interstate or foreign commerce, or possess in or affecting commerce, any firearm or ammunition; or to receive any firearm or ammunition which has been shipped or transported in interstate or foreign commerce.

18 U.S.C. § 922(g)(9). A "misdemeanor crime of domestic violence" is defined in 18 U.S.C. § 921(a)(33) as:

> (33) (A) Except as provided in subparagraph (C), the term "misdemeanor crime of domestic violence" means an offense that—
>
> (i) is a misdemeanor under Federal or State law; and
>
> (ii) has, as an element, the use or attempted use of physical force, or the threatened use of a deadly weapon, committed by a current or former spouse, parent, or guardian of the victim, by a person with whom the victim shares a child in common, by a person who is cohabiting with or has cohabited with the victim as a spouse, parent, or guardian, or by a person similarly situated to

---

**2.** The only remedy available under § 925A is an order that the error be corrected or that the transfer be approved. While the statute does allow a court, in its discretion, to award the prevailing party its reasonable attorney's fees, it does not provide for an award of monetary damages.

a spouse, parent, or guardian of the victim.

18 U.S.C. § 921(a)(33).

In interpreting these provisions, several federal courts have considered whether the predicate offense for § 922(g)(9) must include the domestic relationship described in § 921(a)(33)(A)(ii) as an element of the crime. While no authority exists from the Sixth Circuit on this issue, every circuit that has considered this question has concluded that § 921(a)(33) requires only that the use or attempted use of physical force be an element of the predicate misdemeanor offense, and that the existence of a domestic relationship need not be. *See e.g., United States v. Kavoukian,* 315 F.3d 139, 144–45 (2d Cir.2002) (reversing the dismissal of an indictment under § 922(g)(9) on the basis that a state conviction for menacing in the second degree does constitute a predicate under the statute); *United States v. Chavez,* 204 F.3d 1305, 1313–14 (11th Cir.2000) (concluding that conviction under a federal general assault statute can be a "misdemeanor crime of domestic violence"); *United States v. Meade,* 175 F.3d 215, 218–19 (1st Cir.1999) (holding that the defendant's state misdemeanor conviction under a general assault and battery statute for assaulting his spouse is a "misdemeanor crime of domestic violence"); *United States v. Smith,* 171 F.3d 617, 620 (8th Cir.1999) (holding that "while § 921(a)(33) requires proof of a domestic relationship, it only requires the predicate misdemeanor to have one element: the use or attempted use of physical force" and therefore that conviction under an Iowa misdemeanor simple assault statute for the defendant's assault of the mother of his child constituted a "misdemeanor crime of domestic violence").

More recently the Federal Circuit has concluded, in the civil context, that the existence of a domestic relationship need not be an element of the misdemeanor crime that serves as the basis for denial of a firearm under § 922(g)(9). In *White v. Department of Justice,* 328 F.3d 1361 (Fed.Cir.2003), the plaintiff was employed as a correctional officer with the federal bureau of prisons. After he was convicted in state court for simple assault of a "woman with whom he had a close personal relationship," his employment was terminated based on the fact that he could no longer lawfully carry a firearm and therefore could not adequately perform his job responsibilities. 328 F.3d at 1363. The plaintiff argued that his simple assault conviction was not a misdemeanor crime of domestic violence under § 922(g)(9) because his conviction was only for simple assault, and because his relationship with the victim did not qualify as domestic.

The court rejected this argument, concluding that on review "of § 921(a)(33)(A)(ii) and reading the statute in light of clear and explicit legislative history [we] conclude, as have other circuits, that the statute includes convictions for crimes that do not incorporate a domestic relationship as an element, so long as the agency's proof establishes a domestic relationship as described in § 921(a)(33)(A)(ii), because in light of the legislative history the only statutorily-required element is violence or the threat thereof." *Id.* at 1364. Thus, the plaintiff's state law conviction for simple assault was a misdemeanor crime of domestic violence because the crime contained an element of use or attempted use of physical force, and there was sufficient evidence of a domestic relationship between the plaintiff and the victim.

Based on this authority, Eibler was not wrongfully refused a firearm under § 922(g) if: (1) his state law conviction contained the element of use or attempted use of physical force; and (2) the underly-

ing assault was against a person Eibler had a domestic relationship with as defined under § 921(a)(33)(A)(ii). As to the first inquiry, Eibler concedes that his state law simple assault charge contains an element of use or attempted use of physical force. Thus, the first element is satisfied.

As to the second prong, Eibler contends that his relationship with Kathleen Bartunek ("Bartunek"), the victim of the assault, was not domestic in nature. He argues that to qualify as a domestic relationship under the statute, his relationship with her must fall into one of the following three categories: (1) a spouse, parent or guardian; (2) a person with whom he shares a child in common; or (3) a person with whom he has or is cohabiting with as a spouse, parent or guardian. According to Eibler, because his relationship with Bartunek was not that of a spouse, guardian or parent, a person with whom he shares a child, or a person with whom he ever cohabitated with as a spouse, parent, or guardian, it does not qualify as domestic under this provision.

Eibler's arguments are unpersuasive. First, his analysis largely ignores the fourth category of domestic relationships articulated under § 921(a)(33)(A)(ii), namely persons "similarly situated to a spouse, parent or guardian." § 921(a)(33)(A)(ii). Several courts have concluded that a "live-in girlfriend" qualifies as a domestic relationship under this provision. *See U.S. v. Shelton*, 325 F.3d 553 (5th Cir.2003) (victim of assault was a live-in girlfriend); *United States v. Denis*, 297 F.3d 25 (1st Cir.2002) (defendant's "live-in girlfriend" of two months was similarly situated to spouse for purposes of § 921(a)(33)(A)(ii)). Here, Eibler does not deny Defendant's contention that Bartunek was his girlfriend for more than six years. Indeed, the police report concerning the assault incident states that Eibler and Bartunek were "living as Spouse[s]," and listed Bar-

tunek's relationship to Eibler as "Girlfriend/Wife." Def. Mot. for Summary J., Ex. C at 4–5. Thus, even if Bartunek was not Eibler's wife, the fact that she was his girlfriend satisfies the "similarly situated requirement" of § 921(a)(33)(A)(ii).

Eibler argues that *Shelton* and *Denis* are distinguishable because there is no evidence that he and Bartunek ever lived together. Caselaw suggests, however, that this is not a requirement. In *White*, the relationship between the plaintiff and the victim was described as "close [and] personal," and that the victim was the plaintiff's "long-time paramour." 328 F.3d at 1363–64. More importantly, when the assault on the victim occurred, the two had separate residences and were no longer living together, but did "maintain[ ] an intermittent relationship." *Id.* at 1369. Based on these facts, the court concluded that the plaintiff's relationship with the victim was properly characterized as "similarly situated to a spouse." *Id.* A similar conclusion was reached in *U.S. v. Cuervo*, 354 F.3d 969 (8th Cir.2004), where the defendant had been convicted of assaulting his secretary, with whom he had engaged in a long-term extramarital affair, even though the defendant was married and lived with his wife. The Eighth Circuit affirmed the defendant's conviction, finding that the defendant's extramarital relationship qualified as similarly situated because the evidence established that the two "shared an intimate personal relationship." *Id.* at 998. Here, Eibler does not deny that Bartunek was his girlfriend with whom he had a long-time close and personal relationship. Under *White* and *Cuervo*, the fact that the two may not have been living together at the time of the assault is not dispositive. Thus, the court concludes that Eibler's underlying assault was committed against a person with whom he had a domestic relationship.

Accordingly, because Eibler's simple assault conviction contained the element of use or attempted use of physical force, and because the underlying assault was against a person Eibler had a domestic relationship with, the denial of a firearm purchase did not violate § 922(g)(9).

## IV. CONCLUSION

For these reasons, Defendant's Motion for Summary Judgment (ECF No. 17) is granted.

IT IS SO ORDERED.